94 N.J. Super. 53 (1967)
226 A.2d 748
LEOPOLD FRANKEL AND ESTHER S. FRANKEL, PLAINTIFFS,
v.
C. BURWELL, INC., A NEW JERSEY CORPORATION, FRANCIS X. GRAVES, INDIVIDUALLY AND AS MAYOR OF THE CITY OF PATERSON, FRANK VENTRELLA, INDIVIDUALLY AND AS BUILDING INSPECTOR OF THE CITY OF PATERSON, AND PETER J. CAMMARANO AND CITY OF PATERSON, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 31, 1967.
*55 Messrs. Frankel & Frankel, attorneys for plaintiffs.
Messrs. Stasse & Stasse, attorneys for defendant C. Burwell, Inc.
Mr. Joseph A. La Cava, attorney for defendants Francis X. Graves, Frank Ventrella and City of Paterson.
Mr. Peter J. Cammarano, attorney pro se.
CRANE, A.J.S.C.
This action in lieu of prerogative writs seeks to contest the validity of the issuance of a building permit.
Plaintiffs are taxpayers of the City of Paterson and owners of property located at 455 East 42nd Street, Paterson. A contiguous piece of real property, known as 769-775 Twentieth Avenue, Paterson, is the subject matter of this suit. The property is in an area known as Zone R-1B, designated for the erection of one-family detached dwellings.
In 1962 a variance to permit the erection of an office building was recommended by the zoning board of adjustment and granted by the board of public works. Litigation upholding the validity of the variance was concluded by the *56 denial of an application for certification by the New Jersey Supreme Court in July 1964. Subsequently, an application for a rehearing before the board of adjustment was denied and an appeal was taken from the denial. Ultimately that litigation was terminated by the denial of an application for certification to the New Jersey Supreme Court in April 1966.
The present owner, C. Burwell, Inc., procured a building permit from defendant building inspector on December 5, 1966 for the erection of a two-story building in accordance with plans showing a building considerably different in appearance from that shown on the plans previously submitted upon the application for a variance. The plans, prepared by the same architect, provided for a building of generally the same dimensions, but the arrangement of entrances and exits, location of doors and windows, and the building materials specified were different. Being uncertain of the propriety of issuing a permit under such circumstances and mindful of the previous litigation, the building inspector consulted counsel to the board of adjustment as to whether the plans complied with the terms of the variance previously granted. After consultation he issued the permit.
The present action has been brought to contest the validity of the issuance of the building permit. At the hearing on the return day of the order to show cause the complaint was dismissed with respect to defendant Francis X. Graves, who is no longer mayor of the City of Paterson, and defendant Peter J. Cammarano, who is no longer the owner of the property.
The 1962 plans show a two-story office building, 30' in width and 85' in length with a full basement. The elevations show exterior walls of glass, aluminum and porcelain panels, with a canopy-covered entrance on one of the street sides. A parking area approximately 50' x 100' is also shown. The interior plans show central corridors approximately six feet wide, with offices on either side of the corridor on each floor.
*57 The 1966 plans show a building of the same exterior dimensions but with a considerably different appearance. The front elevation, for example, shows no windows or doors in a wall of concrete block to be painted or covered with stucco. The side elevations show similar concrete block walls; however, windows are provided on both the first and second floors. The rear elevation shows the same concrete block construction walls, with an entrance surrounded by large plate glass panels located in the middle. Pedestrian entrance to the building is from the parking lot area rather than from the street, as in the 1962 plans. Other smaller narrow strip windows, running from the ground to the roof level, provide light for both the first and second floors. A distinctive feature of the rear elevation is the presence of two large overhead garage-type doors at either end of the building. These serve as entrances to the building from two depressed loading docks. It is significant that although the zoning ordinance requires loading docks in buildings of a much larger size, the building inspector could not recall a single instance in the City of Paterson where an office building was equipped with a loading dock. Parking space for ten cars is shown on the plot plan. The basement plan shows only a small boiler room, 10' x 14', the rest of the area being unexcavated. The first floor plan shows a foyer, a showroom, a storage area and a room called a demonstration office. The second floor plan shows an upper foyer, a reception area, a general office, two private offices, men's and ladies' rooms, and a large office area, 28' x 32'.
The significance of the showroom, storage and demonstration areas appears from the evidence relating to the nature of the business of defendant, C. Burwell, Inc. It is engaged in the business of selling tools, machinery, equipment, polishing compounds and other supplies used in the metals polishing and finishing industry. Presently, four salesmen, two girls and the president are employed by the organization. A principal sales item is a machine known as a finishing vibrator, approximately four feet high by four *58 feet in diameter which is used to deburr and polish metal parts. The machine consists of a drum mounted off-center which, when rotated by an electric motor, vibrates, causing the parts which have been placed in it to tumble and come into contact with one another. A special compound is used in conjunction with the machine for polishing. Among other items sold are ultrasonic vibrators, surface measuring equipment, abrasive wheels, cutting tools and repair parts. In its present location, C. Burwell, Inc. does not keep machines on hand for sale to customers, nor does it intend to do so at the premises in question. Machines of this kind are drop-shipped, that is, shipped directly from the manufacturers to the customer. The company does presently display some machines, however, and does intend in its newly prepared building to display such machines in its showroom. It presently demonstrates the use of such machines, and it is intended that such machines will be demonstrated in the room designated by the architect as a demonstration office. Chester Burwell, president of defendant corporation, testified that such processing demonstrations are an important part of their selling business. He also testified that a quantity of supplies and parts would be kept on hand in the storage area for use in the demonstrations and for sale to customers who might be faced with an emergent situation.
As presented to the board of adjustment, the 1962 plans did not specify any particular type of office activity. Apparently the office building was to be of the type used for the rental of individual office units. An office building has been defined as one serving such a purpose. Jones v. Board of Adjustment, 119 Colo. 420, 204 P.2d 560, 565 (Sup. Ct. 1949). We need not, however, apply such a narrow definition in order to decide this case. Here the problem is whether the proposed use of the premises constitutes an office use, with permissible accessory uses for demonstration, display and storage uses, or whether the proposed use as viewed in its entirety is essentially a commercial one with incidental office uses. The latter view seems the more logically persuasive.
*59 As is clearly indicated from the plans and from the testimony presented, defendant owner intends to use the premises in question as a place from which sales activities will be conducted. This will include the storage, display and demonstration of items of machinery of substantial size. Practically the entire first floor is to be devoted to purposes of storage, display and demonstration. Indeed, the office uses will be accessory to the principal use relating to the display, demonstration and sale of machinery, supplies and equipment to the metals finishing industry. This is borne out by a clause which was inserted in the contract for the purchase of the premises providing as follows:
"The consumation of this sale requires that the City of Paterson allow C. Burwell, Inc. to carry on the business they are now engaged in. This includes the selling of industrial equipment, tools and parts, the laboratory processing of parts and the warehousing of related components."
The physical differences between the building shown in the 1962 plans and the one shown in the 1966 plans have already been demonstrated. Clearly, the plans for the building presently proposed have departed substantially from those under contemplation when the variance was granted.
It would seem to be fundamental that a building erected pursuant to a variance must be substantially the building for which the variance was granted. Variance applications present many abstract questions. The statute, N.J.S.A. 40:55-39, permits a board of adjustment to recommend variances "in particular cases and for special reasons." In doing so, the board must find that "such relief can be granted without substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan." The board is concerned primarily with the welfare of the entire community; Hochberg v. Freehold, 40 N.J. Super. 276 (App. Div. 1956). Such concern may involve consideration of a wide variety of factors other than the dimensions and location of the building. The public interest *60 may require a determination of whether the proposed building presents an appearance which is compatible with the neighborhood aesthetics. See United Advertising Corp. v. Metuchen, 42 N.J. 1, 6 (1964); Palisades Properties Inc. v. Brunetti, 44 N.J. 117, 139 (1965).
In this instance neither the board of adjustment nor the board of public works has ever seen the plans for the proposed building. They differ so substantially from the 1962 plans we cannot venture to say whether a finding favorable to the property owner would be forthcoming. Of course, it is not for the court to exercise the functions of the municipal authorities.
The preponderance of the evidence demonstrates that the projected use of the building as it has been designed is fundamentally different from that intended for the 1962 building. Thus, the issuance of the building permit was improper.
The argument is advanced, however, on behalf of C. Burwell, Inc. that the expenditure of funds in reliance on the issuance of the building permit gives it a vested interest in the validity of the permit. It is true that under some circumstances an estoppel will arise in favor of the landowner when he has expended funds relying on the permit. Where an irregularity exists which can easily be corrected, such as the failure to file plans, substantial reliance will protect the permittee; Schulze v. Wilson, 54 N.J. Super. 309 (App. Div. 1959). Such reliance will also prevent public officials from revoking a permit regularly issued; however, it will not serve to estop adjoining landowners who may seek relief promptly, Jantausch v. Borough of Verona, 24 N.J. 326 (1957). In this case plaintiffs had no notice of the application for a permit presented on behalf of C. Burwell, Inc. They first received notice of the proposed building when one of them viewed the site-clearing operations in preparation for construction on December 21, 1966. This action was commenced almost immediately, the complaint being filed on December 23, 1966. Moreover, no substantial *61 amount of work has been done; only clearing and the pouring of footings have taken place. Under these circumstances, no estoppel has arisen.
Since the disposition is in plaintiffs' favor, it is unnecessary to decide the many other intriguing questions raised, such as the effect of the period of limitations prescribed by the rules of the board of adjustment and the board of public works. Plaintiff is entitled to judgment. An order may be submitted with consent as to form or settled on notice.