183 N.J. Super. 572 (1982)
444 A.2d 1131
J.P. PROPERTIES, INC., PLAINTIFF,
v.
EDGAR J. MACY, JR., CONSTRUCTION OFFICIAL OF TOWNSHIP OF EVESHAM, AND CHARLES P. BALCZUN, MANAGER OF THE TOWNSHIP OF EVESHAM, DEFENDANTS,
v.
THE BUREAU OF CONSTRUCTION CODE ENFORCEMENT, DIVISION OF HOUSING, DEPARTMENT OF COMMUNITY AFFAIRS, STATE OF NEW JERSEY; QUILL CORP., JOHN PASQUARELLA, MARK MOORE AND MARLBORO HOME BUILDERS, INC., DEFENDANTS.
Superior Court of New Jersey, Law Division, Burlington County.
Decided February 19, 1982.
*574 John O. Sitzler for J.P. Properties (Mathews, Sitzler, Weishoff & Sitzler, attorneys).
Stephen L. Ellsworth for Edgar J. Macy, Jr.
William S. Ruggerio for Township of Evesham (Ruggerio & Freeman, attorneys).
Steven Sacharow for Charles P. Balczun (Wizmur & Sacharow, attorneys).
Peter E. Markens, Deputy Attorney General for State of New Jersey (John J. Degnan, Attorney General of New Jersey).
HAINES, A.J.S.C.
This is a declaratory judgment action. In question is the authority of the Evesham Township Manager, Charles P. Balczum, over the Township Construction Official, Edgar J. Macy, Jr. Balczun was appointed pursuant to the provision of the Faulkner Act, N.J.S.A. 40:69A-1 et seq., Macy under the Uniform Construction Code Act, N.J.S.A. 52:27D-119 et seq. The issues have not been addressed in any reported decision. The township manager claims authority over the construction official to:
(1) discipline him for repeated failures to enforce various provisions of the Uniform Construction Code;
(2) control the issuance of "prior approvals" and temporary certificates of occupancy;
(3) require him to provide regular reports of his activities;
(4) issue a stop-work order under the Soil Erosion and Sediment Control Act, N.J.S.A. 4:24-35.
*575 Numerous disputes have arisen over these claims resulting in the institution of disciplinary proceedings against Macy by the manager. The proceedings have been restrained pending the receipt of this opinion.
The issues here have been submitted on the record; briefs and oral argument have been entertained. There are no factual disputes.

A. Code Enforcement Authority in General: Manager vs. Construction Official

(1) The Authority of the Construction Official

Local enforcement of the Uniform Construction Code is entrusted by N.J.S.A. 52:27D-126(a) to the construction official (and any necessary subcode officials), who approves all construction permit applications, N.J.S.A. 52:27D-131, inspects all construction undertaken pursuant to a permit, N.J.S.A. 52:27D-132, and issues all certificates of occupancy, N.J.S.A. 52:27D-133. He may issue stop orders under N.J.S.A. 52:27D-132(c) when construction violations occur. His duties are spelled out in great detail in N.J.A.C. 5:23-4.3(c)4.
The Commissioner of Community Affairs determines the qualifications of the construction official, N.J.S.A. 52:27D-126(c), for which purpose rules have been adopted pursuant to N.J.S.A. 52:27D-124(a). They appear in N.J.A.C. 5:23-5.25. Appeals from decisions of the construction official may be taken to the local or county Construction Board of Appeals pursuant to N.J.S.A. 52:27D-127.

(2) The Authority of the Township Manager

Our statutes provide the manager with very broad authority over municipal affairs, officials and employees. He executes the laws of the township, appoints and removes officials and investigates municipal affairs. N.J.S.A. 40:69A-95. Nevertheless, it is clear that his authority over the construction official is limited.
*576 The Uniform Construction Code was adopted, as its name implies, to provide uniformity, to supersede the maze of local building ordinances and to overcome ragged, discriminatory municipal enforcement practices. N.J.S.A. 52:27D-120; N.J. State Plumbing Inspectors v. Sheehan, 163 N.J. Super. 398, 401 (App.Div. 1978); Home Builders League v. Evesham Tp., 174 N.J. Super. 252, 257 (Law Div. 1980), aff'd 182 N.J. Super. 357 (App.Div. 1981). Municipal control over Code enforcement, through anyone other than the construction official, would frustrate these legislative purposes. The State, by enacting the Code, clearly intended to preempt the field. Overlook Terrace v. West New York, 71 N.J. 451 (1976); Fair Lawn Ed. Ass'n v. Fair Lawn Bd. of Ed., 79 N.J. 574, 586 (1979). In doing so it reserved to itself, through the Department of Community Affairs, the right to discipline the construction official by suspending or revoking his license in the event, among other things, he violates the provisions of the Construction Code, is grossly negligent in the performance of his duties or fails, over a period of time, to maintain a minimally acceptable level of competence. N.J.A.C. 5:23-5.11(a). If the manager were permitted to discipline the construction official for any of the reasons set forth in these broad regulations, as claimed here, or to enforce any provisions of the Code, conflicting state and municipal policies would soon develop.
The consequence of the State's preemption of authority is to remove all jurisdiction of the township manager over matters of Code enforcement and construction official discipline based upon his official activities. This does not mean that the manager is entirely without authority. On the contrary, he shares control with the State, a dual arrangement which has been recognized in connection with tax assessors, whose quasi-judicial role and state commitments are not unlike those of construction officials. Horner v. Ocean Tp., 175 N.J. Super. 533, 539 (App.Div. 1980); Ream v. Kuhlman, 112 N.J. Super. 175, 180 (App.Div. 1970). The manager may determine salary, assign office space, location and equipment, require reports of activities, investigate performance *577 and generally fix terms and conditions of employment. He may impose discipline for failure to maintain office hours, failure to maintain records, failure to serve the public courteously, and for dishonesty, intoxication and other forms of misbehavior not related to Code enforcement. In appropriate cases, he may undertake proceedings to remove the construction official from office although such removal would not affect the official's license. These examples are not intended to be limiting. In defining the manager's authority, however, no intrusion upon any area preempted by the State may be permitted. When the manager believes that the construction official is not performing his Code obligations, the appropriate response is a request to the Department of Community Affairs to investigate and impose discipline under its regulations.

(3) Prior Approvals and Temporary Certificates of Occupancy

N.J.S.A. 52:27D-131 allows a construction permit to be issued only when the application, among other things, shows compliance with "the requirements of other applicable laws and ordinances." This is the so-called "prior approval" rule. It requires the construction official, before issuing a permit to build, to satisfy himself, for example, that any required zoning variance has been obtained, or that site plan and subdivision approvals have been granted. The township manager, pointing to the complexity of some of these approvals and to his intimate knowledge, by virtue of his office, of township concerns relating to land use, argues that he may control construction permits involving prior approvals. This is not so. The Code authorizes the construction official to decide whether all requirements for the issuance of a permit have been met by an applicant. Prior approvals are among them. Proof that these approvals have been obtained will normally consist of a certificate issued by another municipal official, upon which the construction office may rely without the need for special knowledge or interpretation. Any restriction upon the issuance of construction permits imposed by the manager and based upon his scrutiny of prior *578 approvals, would be a clear interference with the prerogatives of the construction official, an interference which the Code does not countenance. The manager is not left without a remedy. When a prior approval has not been obtained, or the approval contains conditions not being met, he may enforce the penalty provisions and injunctive remedies normally provided in zoning, planning and other municipal legislation.
The same conclusion applies to the issuance of temporary certificates of occupancy, permitted under N.J.S.A. 52:27D-133. The manager adopted regulations restricting the issuance of these certificates because of difficulties experienced in obtaining completion of minor items of construction. He did so without authority under the Code. His rules cannot limit the discretion of the construction official.

(4) Stop Work Orders Under the Soil Erosion and Sediment Control Act

N.J.S.A. 4:24-47 of the Soil Erosion and Sediment Control Act provides:
The district or municipality may issue a stop construction order if a project is not being executed in accordance with the certified plan.
See, also, N.J.A.C. 2:90-1.9(d). The manager claims the right to issue a stop order under this provision. Nothing in the act designates the municipal official who is authorized to issue the order. However, the Code, N.J.S.A. 52:27D-132(c), provides that the municipal enforcing agency (the construction official) may issue a stop order respecting construction being undertaken contrary to any applicable law. (Emphasis supplied). This legislation and the soil erosion statute must be read in pari materia. State v. DiCarlo, 67 N.J. 321 (1975). The Code makes the identification which the earlier statute lacked. It authorizes only the construction official to issue the stop work order; he has issued the construction permit and controls all work performed thereunder. The Soil Erosion Act does not provide concurrent authority to the manager as he suggests. That arrangement would permit the issuance of conflicting orders by *579 the manager and the construction official, an unacceptable result not supported by any statutory language.

B. The Pending Charges

(1) Charges Over Which the Manager Has No Jurisdiction

The township manager has filed a substantial number of charges against the construction official which are involved in the recessed disciplinary hearing. Many of these are beyond the manager's jurisdiction. The following are in this category and may not be pursued:
(a) Authorizing construction without a zoning or construction permit.
(b) Negligent failure to require proper foundation anchorage, or to produce evidence of waiver when requested by a resident.
(c) Failure to notify any other official or employee of the Township of the receipt of plans and fees.
(d) Failure to enforce the Soil Erosion Act.
(e) Issuing a permit without proof that water and sewer permits had been obtained.
(f) Failure to require continuous concrete sidewalks.
(g) Issuing permits without prior zoning approvals.
(h) Allowing completion of all construction where the issued permit was limited to plumbing work.
(i) Failure to follow the proper class of review for certain construction.
The charge that Macy improperly reviewed the township's fire protection subcode, issuing a certificate of occupancy after one had been refused by the fire subcode official, requires comment. The action is permitted by N.J.S.A. 52:27D-126.1, which provides that "fire prevention subcode officials are subject to the administration and enforcement jurisdiction of municipal construction officials." This language invites the latter to review and correct decisions of the former. Furthermore, the issuance of a certificate of occupancy by the construction official, even if improper, is not a matter over which the manager has control. Discipline in this area is the sole province of the State.

(2) Charges Over Which the Manager Has Jurisdiction

The charges which remain are proper subjects of managerial concern. They are:

*580 (1) Failure to safeguard plans and checks.
(2) Harassment of a township official and employee.
(3) Failure to cooperate with municipal officers and employees.
(4) Enforcing the zoning ordinance with respect to side yard requirements. (Properly considered only if the zoning problem was not within an area of Macy's concern with respect to plan compliance.)
(5) Public disagreement over the issuance of a zoning permit.