248 N.J. Super. 241 (1991)
590 A.2d 736
OCEAN COUNTY BOARD OF REALTORS, DIANE RHINE, WILLIAM BUCKLEY AND TOM LEWIS, PLAINTIFFS,
v.
BOROUGH OF BEACHWOOD, BOROUGH OF ISLAND HEIGHTS, AND TOWNSHIP OF LONG BEACH, DEFENDANTS.
Superior Court of New Jersey, Law Division Ocean County.
Decided April 2, 1991.
*243 Thomas P. Butz for plaintiffs (Schuman, Butz, Bezdecki & Scalia, attorneys).
Brian E. Rumpf for defendant Borough of Beachwood (Hiering, Hoffman & Gannon, attorneys).
Charles W. Hutchinson, Jr. for defendant Borough of Island Heights (Gilmore & Monahan, attorneys).
Eric J. Miller for defendant Township of Long Beach (Shackleton, Hazeltine & Bishop, attorneys).
SERPENTELLI, A.J.S.C.
Can municipalities condition the issuance of a certificate of occupancy for residential resales on the payment of municipal real estate taxes and water and sewer charges which are due or delinquent at the time of the application for the certificate? Ordinances adopted by the three defendant municipalities mandate those payments.
Plaintiffs charge that defendants lack authority to impose this requirement. Defendants have moved for summary judgment. The court has treated plaintiffs' opposition to the motions as a cross-motion for summary judgment since there is no dispute concerning material issues of fact.
*244 In 1983, Long Beach Township adopted Ordinance 83-7C which directs that a certificate of occupancy must be obtained before title to any existing residential or commercial property is transferred. The next year, Long Beach Township amended the ordinance to provide:
No zoning permit, building permit or certificate of occupancy shall be issued unless application for the same is accompanied by a certification from the Township Tax Collector that no taxes or assessments for local improvements are due or delinquent on the property which is the subject of the application. [Ord. 84-1C]
In 1989, Long Beach Township adopted Ordinance 1989-9C which it believes gives the municipality the authority to require the payment of due or delinquent water and sewer charges before a certificate of occupancy is issued for a resale of any existing structure. While the ordinance does not expressly so provide, the court will assume for the purposes of a complete disposition of this matter that the ordinance is meant to accomplish that result.
Island Heights and Beachwood have adopted ordinances which have been implemented in the same manner as Long Beach Township. The Island Heights and Beachwood ordinances facially govern only structures used for businesses operating under a permit. They were apparently enacted pursuant to authority delegated by N.J.S.A. 40:52-1.2. However, counsel for both municipalities have stipulated that their ordinances also have been applied to residential sales essentially in the same manner as Long Beach Township. Again, in the interest of judicial efficiency, the court will assume that the ordinances accomplish that result.
Plaintiffs are the Ocean County Board of Realtors, a nonprofit corporation comprised of licensed real estate brokers, as well as three individual brokers, one of whom resides in Long Beach Township. The brokers allege that they are actively engaged in listing and selling property throughout Ocean County. They assert that defendants' ordinances have improperly impacted their businesses. Specifically, they claim that in certain instances they have had to advance their own funds to secure a *245 certificate of occupancy before closing since the seller was unable to pay taxes, water or sewer charges. On the merits, plaintiffs contend that the challenged ordinances are preempted by Titles 54 and 40 of the New Jersey statutes which they insist comprehensively regulate the assessment and collection of real estate taxes and water and sewer charges throughout the State.
All defendants' motions for summary judgment rest on three grounds. First, they argue that plaintiffs have no standing. Second, they contend that this action is time barred by R. 4:69-6(a). Finally, they claim that the ordinances in question are legitimate exercises of the municipal police power. Beachwood has also raised the defense of ripeness.

I.

Standing.
New Jersey courts traditionally have taken a liberal approach to the issue of standing. Generally, plaintiff need only show a sufficient stake in the outcome of the proceeding and a position which is adverse to defendant. Home Builders League of So. Jersey, Inc. v. Tp. of Berlin, 81 N.J. 127, 132, 405 A.2d 381 (1979). Our courts will not render advisory opinions or function in the abstract, New Jersey Turnpike Authority v. Parsons, 3 N.J. 235, 240, 69 A.2d 875 (1949), nor will they entertain suits by strangers to the dispute. Bergen County v. Port of New York Authority, et al., 32 N.J. 303, 307, 318, 160 A.2d 811 (1960). However, the courts will give "due weight to the interests of individual justice, along with the public interest, always bearing in mind that throughout our law we have been sweepingly rejecting procedural frustrations in favor of `just and expeditious determinations on the ultimate merits.'" Crescent Park Tenants Assoc. v. Realty Equities Corp. of N.Y., 58 N.J. 98, 107-108, 275 A.2d 433 (1971).
Our cases also have discarded the concept that plaintiff must be able to show that some injury has been suffered in order to *246 maintain standing. Rather, it is sufficient to show a substantial likelihood of harm. Home Builders League of So. Jersey, Inc., supra, 81 N.J. at 134, 405 A.2d 381. Thus, plaintiffs need not show any one particular occurrence of harm and for that reason, Beachwood's contention that this action is not ripe for adjudication must fail.
In keeping with these principles, the Supreme Court in Crescent Park noted the increasing trend to permit nonprofit associations to litigate issues of public interest even though the harm involved may technically not be attributable to the association but rather to its constituents. Crescent Park, supra, 58 N.J. at 105-106, 275 A.2d 433. Furthermore, where a substantial public interest is involved the courts have found that a slight private interest, when added to and harmonized with the public interest, is sufficient to give standing. Home Builders League of So. Jersey, Inc., supra, 81 N.J. at 132, 405 A.2d 381; Elizabeth Federal Savings & Loan Ass'n v. Howell, 24 N.J. 488, 499, 132 A.2d 779 (1957).
The interests of plaintiffs in this litigation meet the criteria necessary to establish standing under our case law. They have both an adequate stake in the outcome and their interests are sufficiently adverse to defendants. The ordinances under attack have the potential to directly injure the members of the Ocean County Board of Realtors. Furthermore, the regulations in question can affect not only the association and its members but all property owners within defendant municipalities.
As to the individual plaintiffs, those who are not residents of defendant municipalities are not necessarily precluded from bringing suit. In Walker, Inc. v. Stanhope, 23 N.J. 657, 130 A.2d 372 (1957), the Court permitted a plaintiff who was neither a taxpayer nor a resident of defendant municipality to challenge the validity of an ordinance where it was shown that plaintiff's business was adversely affected. Finally, plaintiff Buckley is a resident of Long Beach Township. The township *247 argues that the ordinances benefit Buckley as a resident and, therefore, he should not be heard to complain. That judgment is for him to make. A rule to the contrary could become the darling of the municipal attorney's nursery and frustrate many legitimate attacks on municipal ordinances.

II.

Time Limitation.
Next, defendants assert that plaintiffs' complaint is time barred by R. 4:69-6(a), which dictates generally that actions in lieu of prerogative writs shall be commenced within 45 days of the accrual of the right to the review, hearing or relief claimed. Long Beach Township's ordinance was passed in 1984, Island Heights adopted its ordinance in 1984 and Beachwood passed its regulations in 1988.
Plaintiffs acknowledge they are out of time but argue that the relaxation provision of R. 4:69-6(c) should be applied here. That rule allows the court to enlarge the 45 day time frame "where it is manifest that the interest of justice so requires." Our cases instruct that in determining whether the "interest of justice" would be served by relaxation, the decisional law should be examined since that standard was meant to incorporate exceptions carved out by earlier decisions which allowed relaxation in certain circumstances. Schack v. Trimble, 28 N.J. 40, 47-48, 145 A.2d 1 (1958). Those exceptions include cases involving (1) important and novel constitutional issues; (2) informal or ex parte determinations of legal questions by administrative officials; and (3) important public rather than private interests which require adjudication or clarification. Brunetti v. Borough of New Milford, 68 N.J. 576, 586, 350 A.2d 19 (1975).
The alleged evil of the ordinances under review will not only touch the economic well-being of plaintiffs but it has the potential of improperly impeding all those who seek certificates of occupancy in order to sell their homes. Both realtors and *248 homeowners could be subjected to a continuing violation of their rights if the court should refuse to entertain the requested review of the validity of these strictures. Our Supreme Court has recently recognized that these are relevant considerations when weighing the propriety of enlarging the time requirement of R. 4:69-6(a). Reilly v. Brice, 109 N.J. 555, 559, 538 A.2d 362 (1988).
The court is aware that the ordinances here under review exist in other municipalities. There is a significant public interest to be served by adjudicating their validity. Furthermore, if they cannot pass muster, realtors, homeowners and others should not be subjected to continued enforcement merely because the regulations were not challenged within the time provided by our rules. The creation of the in lieu proceeding by the Constitution of 1947 was not intended to discard "the substantive law of the former prerogative writs as a means of safeguarding individual rights against public officials and governmental bodies" but rather as a means of curing the procedural defects of the old system. Ward v. Keenan, 3 N.J. 298, 308, 70 A.2d 77 (1949). Therefore, the court will relax the 45-day requirement and turn to a decision of this dispute on the merits.

III.

The Police Power and Preemption.
The principal issue in this litigation is the power of the municipalities to enact the ordinances in question. Plaintiffs allege that defendants have not been delegated that power either by the Legislature or the State Constitution. Plaintiffs contend that the collection of taxes and water and sewer charges is regulated comprehensively by Titles 54 and 40 of the New Jersey statutes. They conclude that any attempt by the municipalities to legislate in that area is preempted. Defendants counter that the enactment of the ordinances was a reasonable exercise of the municipal police power consistent *249 with express legislative intent. To that end, defendants direct the court to various statutes which they claim permit municipalities to act in such a manner. These statutes include N.J.S.A. 40:48-2.12a, regarding the authority of the municipality to regulate buildings and structures and their use and occupancy; N.J.S.A. 40:52-1.2, concerning the issuance or renewal of licenses or permits for commercial activity; N.J.S.A. 40:55D-39(e), which is a portion of the Municipal Land Use Law dealing with the discretionary contents of ordinances concerning subdivisions and site plans; N.J.S.A. 40:55D-65(h), which is a portion of the Municipal Land Use Law dealing with the contents of a zoning ordinance and specifically the right to condition any approval of a development application on the payment of taxes or assessments, and N.J.S.A. 40:48-2, the omnibus section providing general delegation to make ordinances, regulations, rules and bylaws not contrary to the laws of the State of New Jersey or the United States which are necessary to effectuate the powers and duties conferred to municipalities.
Our Supreme Court has spoken frequently concerning the issue of preemption. One of the landmark decisions is Summer v. Teaneck, 53 N.J. 548, 251 A.2d 761 (1969). In that case plaintiff challenged an ordinance seeking to regulate certain activities of real estate brokers. It was asserted that state licensing preempted the field and precluded control of broker activities at a local level. In upholding the municipality's authority to adopt the regulation, Chief Justice Weintraub analyzed the guiding principles of preemption:
A municipality may not contradict a policy the Legislature establishes. [citation omitted]. Hence an ordinance will fall if it permits what a statute expressly forbids or forbids what a statute expressly authorizes. Even absent such evident conflict, a municipality may be unable to exercise a power it would otherwise have if the Legislature has preempted the field. This follows from the basic principle that local government may not act contrary to State law. But an intent to occupy the field must appear clearly. [citation omitted]. It is not enough that the Legislature has legislated upon the subject, for the question is whether the Legislature intended its action to preclude the exercise of the delegated police power. [citation omitted].... The ultimate question is whether, upon a survey of all the interests involved in the subject, it can be said *250 with confidence that the Legislature intended to immobilize the municipalities from dealing with local aspects otherwise within their power to act. [53 N.J. at 554-555, 251 A.2d 761]
In Overlook Terrace Management Corp. v. Rent Control Bd. of West New York, 71 N.J. 451, 366 A.2d 321 (1976), the Supreme Court listed some of the pertinent questions to consider in evaluating the applicability of the preemption doctrine. They are:
1) Does the ordinance conflict with state law, either because of the conflicting policies or operational effect?
2) Was the state law intended, expressly or impliedly, to be exclusive in the field?
3) Does the subject matter reflect a need for uniformity?
4) Is the state scheme so pervasive or comprehensive that it precludes coexistence of the municipal regulation?
5) Does the ordinance stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the Legislature? [Id. at 461-462, 366 A.2d 321]
Even more recently, in Dome Realty, Inc. v. Paterson, 83 N.J. 212, 416 A.2d 334 (1980), our Supreme Court, relying on its earlier decision in Inganamort v. Borough of Fort Lee, 62 N.J. 521, 527, 303 A.2d 298 (1973), utilized a three part test to determine the propriety of an exercise of legislative authority by a municipality:
... Under this approach the first question is whether the State Constitution prohibits delegation of municipal power on a particular subject because of the need for uniformity of regulation throughout the State.
....
If the Legislature may delegate authority in the area under scrutiny, the second question is whether the Legislature has in fact done so. [citation omitted]. The third part of the analysis reflects the Legislature's prerogative to divest delegated authority from a municipality. This final issue is thus whether any delegation of power to municipalities has been preempted by other State statutes dealing with the same subject matter. [83 N.J. at 225-226, 416 A.2d 334]
With these guiding principles in mind, the court can proceed to analyze the case before it. The State Constitution does not expressly prohibit delegation of municipal power with respect to the subject of taxation of real property. However, Article *251 VIII, Section 1, paragraph 1, of the New Jersey Constitution does reflect a policy of uniformity in that it mandates that property shall be assessed for taxation under general laws and by uniform rules. The same article contains constitutional authorization delegating to the Legislature the right to enact laws relating to assessment of specified types of real estate use.
It is also clear that Title 54 neither expressly delegates authority to the municipalities to regulate taxation nor expressly grants the State preemptive authority in that field. Yet, even a cursory review of the table of contents of Title 54 reflects a uniform and pervasive legislative scheme as expansive as virtually any subject matter contained within the Revised Statutes of the State of New Jersey. Composed of nine separate subtitles, it covers all aspects of taxation. It establishes the State Tax Department, State Board of Tax Appeals and County Boards of Taxation. It contains express provisions for the taxation of real and personal property, income, stock of state and national banks and trust companies, inheritances and estates, and specific products such as motor fuels, motor carriers, billboards, cigarettes, alcohol, poultry feed, white potatoes, asparagus, apples and sweet potatoes. Additionally, procedures for the creation, enforcement and collection of unpaid taxes are carefully delineated in many of the subtitles.
Most pertinent to the case before the court are the provisions of subtitle 2 which regulate taxation of real and personal property. Chapter 4 of that subtitle governs the assessment and collection of those taxes. Chapter 5 concerns the creation, enforcement and collection of liens for unpaid taxes and other municipal liens on real property. An examination of chapter 4 (N.J.S.A. 54:4-1 through -136) depicts a statewide plan for the assessment and collection of taxes. One example suffices. N.J.S.A. 54:4-66 specifically dictates when taxes are payable and delinquent. That section mandates that taxes are payable on the first day of February, May, August and November in *252 each year after which dates if unpaid, they shall become delinquent.
Chapter 5 (N.J.S.A. 54:5-1 through -129) then affords the protection which the municipalities need to ensure payment of taxes by creating a lien and establishing procedures for the enforcement and collection of the lien on the affected property. Thus, N.J.S.A. 54:5-6 states:
Taxes on lands shall be a lien on the land on which they are assessed on and after the first day of January of the year for which the taxes are assessed, and all interest, penalties, and costs of collection which thereafter fall due or accrue shall be added to and become a part of such lien.
N.J.S.A. 54:5-8 directs that all other municipal charges which are liens on real property shall become liens on the respective dates fixed by law. Thus, water and sewer charges can be treated in the same manner as real estate taxes. N.J.S.A. 54:5-9 makes the lien a first lien paramount to all prior or subsequent encumbrances except subsequent municipal liens. N.J.S.A. 54:5-19 permits enforcement of the lien by authorizing the sale of the property when unpaid taxes or any municipal lien on real property remains in arrears on July first in the calendar year following the calendar year when they became in arrears. Article 3 of chapter 5 (N.J.S.A. 54:5-11 through -18) includes a method to protect a prospective purchaser against a lien for unpaid taxes or other municipal charges. N.J.S.A. 54:5-12 allows a prospective purchaser to obtain a certificate from a designated official which details the taxes, assessments or other municipal liens or charges levied or assessed against the property which are liens thereon at the date of the certificate. Obviously, any purchaser consummating a sale is deemed to be on notice of the lien and would take subject to it.
In passing, it should be noted that chapters 14A and 14B of Title 40 contain provisions which overlap with Title 54. For example, N.J.S.A. 40:14A-21 and:14B-42 regulate the creation, enforcement and collection of liens and require the disclosure of the amount of water and sewer charges or any liens in a *253 certificate to be issued by the same municipal official authorized to make official certificates of municipal taxes.
Thus, in evaluating the third prong of the Dome Realty analysis, namely the issue of whether any delegation of power has been preempted by state statute, it is evident that the State has made comprehensive and uniform laws to ensure that the municipal charges will be paid or that municipalities will be protected adequately against nonpayment. The statutory scheme bespeaks preemption.
Utilizing the five criteria suggested in Overlook Terrace Management, supra, to appraise the claimed preemption, the court reaches the same result. First, the ordinances adopted by defendant municipalities could conflict with state law in their operational effect since, in order to obtain a certificate of occupancy, a seller might be required to pay taxes even before they are due. On oral argument, the court was advised that if the seller seeks to obtain a certificate of occupancy on January 15, the municipality will require payment of the first quarter taxes even though the taxes are not due and payable until February 1. Second, as suggested by the analysis above, a reading of Title 54 implies an intention to make the state law exclusive in the field. Third, the subject matter reflects a need for uniformity. One could imagine the havoc which could develop by allowing each municipality to devise its own method to either assess or collect municipal charges. Fourth, clearly the state scheme is as pervasive and capacious as any other statutory provision and its breadth appears to exclude the potential for coexistence with municipal regulation. Fifth, the ordinance may not stand as an obstacle to the accomplishment and execution of the purposes and objectives of the Legislature, but that alone is not enough to sustain it in the face of the overwhelming indication of preemption evidenced by the other criteria.
In short, the ordinances are little more than overkill. They seek to provide another method to protect what is already *254 satisfactorily ensured by Title 54. No doubt, other municipalities could devise different procedures to help guarantee the collection of taxes. Such devices are neither needed nor are they useful since they could concoct a hodgepodge of conflicting regulations throughout the State. Indeed, Long Beach Township recently gave credence to this proposition. In an effort to soften the effect of its challenged ordinance, it adopted an amendment waiving the necessity of obtaining the certificate of occupancy before closing in one instance. It allows the certificate of occupancy to be placed in escrow with the closing attorney on the condition that the attorney assumes personal liability to pay the taxes, water and sewer charges from the closing proceeds. This unorthodox measure illustrates that uniformity is a most desirable goal in a field so all encompassing as taxation.
In Home Builders League v. Evesham Tp., 174 N.J. Super. 252, 416 A.2d 81 (Law Div. 1980), the court considered a preemption challenge to two municipal ordinances which required an applicant for a construction permit or certificate of occupancy to establish that all real estate taxes on the property involved were paid. Finding that the State Uniform Construction Code Act fully regulates building and construction in New Jersey, the court invalidated the municipal ordinances to the extent that they imposed additional requirements for the issuance of a construction permit or certificate of occupancy. The court noted that because of its ruling of state preemption under the Uniform Construction Code, it was unnecessary to address plaintiffs' contention that the ordinances were also invalid since they allegedly sought to obtain payment of real estate taxes through a means not countenanced in Title 54. The issue not reached in Home Builders League is now resolved by this court. The ordinances before it are invalid because Title 54 has preempted the field.