671 A.2d 636

ACQUA DEVELOPMENT CORP., NEW JERSEY CORPORATION, RCG DEVELOPMENT CORP. OF HOLMDEL V, INC., NEW JERSEY CORPORATION AND FOREST HILLS AT HOLMDEL, INC., A NEW JERSEY CORPORATION, PLAINTIFFS, v. THE TOWNSHIP OF HOLMDEL IN THE COUNTY OF MONMOUTH; THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF HOLMDEL, ALICE M. KARLQUIST, THE DESIGNATED ZONING OFFICER OF THE TOWNSHIP OF HOLMDEL, AND CHARLES NAUGHTON, THE DESIGNATED BUILDING OFFICIAL OF THE TOWNSHIP OF HOLMDEL, DEFENDANTS.

Superior Court of New Jersey
Law Division Monmouth County

Decided: September 28, 1995.

580

*Thomas Daniel McCloskey* for plaintiffs (*Thomas Daniel McCloskey*, attorney).

*Duane O. Davison* for defendants (*Lomurro, Davison, Eastman & Munoz, P.A.*, attorneys).

HAYSER, J.T.C., (temporarily assigned).

May a municipality condition the issuance of a zoning permit on the payment of delinquent real property taxes? That is the central issue presented in this matter.

The essential facts are not in dispute. Plaintiffs are residential developers in the Township of Holmdel. In or about June 1995, plaintiffs Acqua Development Corp. and RCG Development Corp. of Holmdel V, Inc., made applications to the Township's zoning officer for the issuance of zoning permits for several lots in their approved development projects.[1] On or about July 6, 1995, the zoning officer denied these applications due to the fact that the properties in question were burdened with delinquent real property taxes. Thereafter, plaintiffs sought relief by Order to Show Cause, which was entered on July 31, 1995, and the issue as to the denial of the zoning permits was tried on the return date, since, as a matter of law, it was ripe for disposition at that time.

---

[1] The Verified Complaint filed on July 17, 1995 fails to set forth any claims or grievances as to the remaining plaintiff, Forest Hills at Holmdel, Inc.

Plaintiffs state that the defendant zoning officer in denying the zoning permits in question is relying upon two municipal ordinance provisions:

First, Township Ordinance No. 90–28, which provides, in relevant part, as follows:

> SECTION 1. Any applicant for the issuance or renewal of any license or permit issued by the Township of Holmdel, or requiring the approval of the Township of Holmdel, shall be required, if he, she or it is the owner thereof, to pay any delinquent property taxes or assessments on the property wherein the business or activity for which the license or permit is sought or wherein the business or activity is to be conducted.
>
> . . . .
>
> SECTION 4. The provisions of this Ordinance shall not apply to or include any alcoholic beverage license or permit issued pursuant to the 'Alcoholic Beverage Control Act,' R.S. 33:1–1 et seq. *The provisions of this Ordinance shall apply to all other permits and licenses issued by, or requiring approval of, the Township of Holmdel, including but not limited to:*
>
> 1. Permits required pursuant to the Uniform Construction Code;
> 2. Certificates of Occupancy;
> 3. Soil Removal or Excavation Permits;
> 4. Food Establishment Licenses;
> 5. Water and Sewer Connection Permits;
> 6. Demolition Permits;
> 7. Business Sale Licenses;
> 8. Auction Sale Licenses;
> 9. Taxi Owner Licenses;
> 10. Limousine & Livery Licenses;
> 11. Games of Chance Licenses;
>
> [Id. (emphasis added).] [2]

Second, subsection G of Section 78–16 (Permits) of ARTICLE II (Administrative Provisions) of Chapter 78 (Development Regulations) of the Code of the Township of Holmdel, which provides as follows: "[n]o zoning permit, building permit or certificate of occupancy shall be issued for approval granted by the approving

---

[2] The ordinance further states that its enabling statute is *N.J.S.A.* 40:52–1.2, adopted as *L.*1987, *c.*174, *§* 1.

authority, if taxes or assessments for local improvements are due or delinquent on the property for which application is made." [3]

Ultimately, the question is whether the actions of the defendant zoning officer were arbitrary, capricious, unreasonable or, more simply, erroneous, in conditioning the issuance of the zoning permits in question on the payment of delinquent real property taxes. *See generally, Anastasio v. Planning Bd. of Tp. of West Orange,* 209 *N.J.Super.* 499, 522, 507 *A.*2d 1194 (App.Div.), *certif. denied,* 107 *N.J.* 46, 526 *A.*2d 136 (1986). The answer depends upon the validity of the ordinances in question relied upon by the zoning officer in denying the zoning permit approvals.

 Like any municipal ordinances, there is a presumption of validity that attaches to the ordinances in question, which places the burden upon the plaintiffs to clearly show that the ordinances, particularly as they may apply to them, bear no reasonable relationship to the public health, morals, safety or welfare. *See First Peoples Bank v. Medford Tp.,* 126 *N.J.* 413, 418, 599 *A.*2d 1248 (1991); *Vickers v. Tp. Com. of Gloucester Tp.,* 37 *N.J.* 232, 242, 181 *A.*2d 129 (1962), *cert. denied,* 371 U.S. 233, 83 S.Ct. 326, 9 L.Ed.2d 495 (1963), *rev'd on other grounds,* 92 *N.J.* 158, 456 *A.*2d 390 (1983). Moreover, a court should not question the wisdom of an ordinance, and if it is reasonably debatable, it should be upheld. *Bow & Arrow Manor v. Town of West Orange,* 63 *N.J.* 335, 343, 307 *A.*2d 563 (1973). This is the same standard that applies to judicial review of other municipal actions. *Kramer v. Bd. of Adjust., Sea Girt,* 45 *N.J.* 268, 296, 212 *A.*2d 153 (1965); *Rowatti v. Gonchar,* 101 *N.J.* 46, 51–52, 500 *A.*2d 381 (1985). Finally, however, the ordinances can only carry out those powers delegated by the Legislature to municipalities. *Riggs v. Long Beach Tp.,* 109 *N.J.* 601, 610–611, 538 *A.*2d 808 (1988).

---

[3] Section 78–3 defines "approving authority" as, "[t]he Planning Board, unless a different agency is designated in this ordinance pursuant to the Municipal Land Use Law." *See also, N.J.S.A.* 40:55D–3.

Plaintiffs argue that under the holdings in *Home Builders League, etc. v. Evesham Twp.*, 174 *N.J.Super.* 252, 416 *A.2d* 81 (Law Div.1980) and *Ocean Cty. Realtor Bd. v. Beachwood Bor.*, 248 *N.J.Super.* 241, 590 *A.2d* 736 (Law Div.1991), the zoning officer may not condition the approval of zoning permits on the payment of delinquent taxes, and the ordinances in question, therefore, are invalid. While not precedential, it is urged that these decisions should be persuasive in resolving the issue presented in the instant matter. Although not controlling, the opinions of courts of coordinate jurisdiction, indeed, should be taken into consideration in deciding an issue as presented in this case. *Manturi v. V.J.V., Inc.*, 179 *N.J.Super.* 300, 306, 431 *A.2d* 859 (App.Div.1981).

In *Home Builders League*, the court concluded that ordinances that required a construction (building) permit applicant or certificate of occupancy applicant to have current all real property taxes before the permit or certificate for that property could issue, were invalid, since they imposed additional requirements for receipt of these documents beyond those pre-empted by the State Uniform Construction Code Act, *N.J.S.A.* 52:27D–119 to –141, and its implementing regulations.

However, the *Home Builders League* court also concluded that the area of pre-emption only includes requirements "within the area of action or umbrella of the act or rules adopted by the Commission implementing the act." *Home Builders League, supra*, 174 *N.J.Super.* at 260, 416 *A.2d* 81. As the court stated: "[t]he references in the statutes and rules to 'other applicable laws and ordinances' refer to standards adopted which may not be appropriate for coverage within the scope of the act. *These, obviously, would include compliance with a zoning ordinance or an ordinance requiring connection to a water or sewer system.*" *Id.* at 260, 416 *A.2d* 81 (emphasis added); *see also, N.J.S.A.* 52:27D–131 and *N.J.A.C.* 5:23–2.15(b).

In *J.P. Properties v. Macy*, 183 *N.J.Super.* 572, 444 *A.2d* 1131 (Law Div.1982), the court set forth the obvious purpose and reason

for the Act: "[t]he Uniform Construction Code was adopted, as its name implies, to provide uniformity, to supersede the maze of local building ordinances and to overcome ragged, discriminatory municipal enforcement practices." *Id.* at 576, 444 *A.*2d 1131 (citing *N.J.S.A.* 52:27D–120).

Again, the court in *Home Builders League* stated that in considering the Act, "the intent may ... be summarized as the elimination of *construction* regulations by local government units, the Legislature having decided that there should be a unitary construction code applicable throughout the State." *Home Builders League, supra,* 174 *N.J.Super.* at 257, 416 *A.*2d 81 (emphasis supplied); *see also, N.J. State Plumbing Inspectors Ass'n Inc. v. Sheehan,* 163 *N.J.Super.* 398, 401, 394 *A.*2d 1244 (App.Div.1978); *Matter of Cherry Hill Tp.,* 217 *N.J.Super.* 140, 142–143, 524 *A.*2d 1327 (App.Div.1987).

A zoning approval is not a construction approval. *Mahwah Tp. v. Landscaping Tech.,* 230 *N.J.Super.* 106, 109, 552 *A.*2d 1021 (App.Div.1989). A zoning permit may be required pursuant to the Municipal Land Use Law and not the Uniform Construction Code Act. Specifically, a "zoning permit" may be issued by the "administrative officer" when "required by ordinance as a condition precedent to the commencement of a use or the erection, construction ... or installation of a structure or building and ... which acknowledges that such use, structure or building complies with the provisions of the municipal zoning ordinance *or* variance...." *N.J.S.A.* 40:55D–7 (emphasis added).[4]

Moreover, in *Bell v. Tp. of Bass River,* 196 *N.J.Super.* 304, 482 *A.*2d 208 (Law Div.1984), the court referenced *Home Builders League and J.P. Properties, supra,* and stated that "[t]hese rul-

---

4 "Administrative officer" is defined in the Municipal Land Use Law as "the clerk of the municipality, unless a different municipal official or officials are designated by ordinance or statute." *N.J.S.A.* 40:55D–3. Section 78–3 of the defendant Township's Development Regulations defines "administrative officer," in terms of issuance of a zoning permit, to be the zoning officer.

ings required the construction official in the present case to have a zoning approval exhibited to him *before* he was required to issue a building permit.... It *was* the intention of the Legislature that zoning matters affecting construction applications be resolved *before* permits may be issued by construction officials." *Id.* at 315, 482 *A.*2d 208 (emphasis added); *see also, Cherry Hill Tp. v. Oxford House,* 263 *N.J.Super.* 25, 52, 621 *A.*2d 952 (App.Div.1993).

Subsection 78–16B of the defendant Township's Development Regulations provides that "a zoning permit shall be issued simultaneously with or before the issuance of any building permit or certificate of occupancy." That provision, together with Subsection 78–16G, has existed since Section 78–16 was adopted by Township Ordinance No. 3–82 on April 20, 1982. On May 23, 1994, Township Ordinance No. 94–12 was adopted, which clearly identified (1) that a zoning permit was "required as a condition precedent to the commencement of a use or the erection ... construction ... or installation of a structure or building," (parroting *N.J.S.A.* 40:55D–7) and (2) that the posting and approval of a performance guarantee was required as a condition precedent to the issuance of the zoning permit. *See N.J.S.A.* 40:55D–53.[5]

Finally, at the time *Home Builders League* was decided, *N.J.S.A.* 40:52–1.2, was not in effect, and therefore, its impact could not be considered by the trial court. Thus, *Home Builders League* is not relevant to resolving the issue now before the court.

In *Ocean Cty. Realtor Bd., supra,* the court concluded that "the issue not reached in *Home Builders League* is now resolved by this court." *Ocean Cty. Realtor Bd. supra,* 248 *N.J.Super.* at 254, 590 *A.*2d 736. That "issue" concerned whether the state tax code (Title 54 of the New Jersey statutes) pre-empted a municipal ordinance requiring, among other things, the payment of delinquent real property taxes before a resale certificate of occupancy

---

[5] At oral argument, the plaintiffs clarified, if not abandoned, their argument that the history of the zoning permit administration in the Township requires the conclusion that it served as the functional equivalent of a building permit.

can issue. The court answered in the affirmative. However, this decision is likewise distinguishable.

 A resale certificate of occupancy, commonly denoted as a certificate of continued occupancy, like the initial certificate of occupancy, is created under ordinance, as well as the Uniform Construction Code Act. *See State v. C.I.B. Intern.*, 83 *N.J.* 262, 270–271, 416 *A.*2d 362 (1980) and *N.J.A.C.* 5:23–2.6. It is also not a zoning permit, nor was the issue of a zoning permit the subject matter of the court's decision. Therefore, for the reasons already discussed, a zoning permit approval is not germane to any even claimed pre-emptive aspects of the Act. However, the use of the certificate of occupancy to control delinquent tax payments, earlier rejected in *Home Builders League,* was, nevertheless, the foundation block for the Title 54 pre-emption conclusion ultimately reached by the court in *Ocean Cty. Realtor Bd.*

Moreover, the issue here concerns the existence of specific statutory authority to permit the condition of requiring the payment of delinquent real property taxes prior to receiving a zoning permit. In *Wildwood Storage v. Mayor & Council,* 260 *N.J.Super.* 464, 616 *A.*2d 1331 (App.Div.1992), the court was asked to determine whether a municipality under a municipal ordinance could condition the receipt of a mercantile license, required for the conduct of any business in the municipality, on the payment of delinquent real property taxes. In determining that the municipality could take such action, and reversing the decision of the trial court, the court stated:

> "[w]e conclude that *Ocean County Bd. of Realtors v. Borough of Beachwood,* 248 *N.J.Super.* 241, 590 *A.*2d 736 (Law Div.1991), is irrelevant because *N.J.S.A.* 40:52–1.2 specifically gives the City of Wildwood the power to adopt an ordinance denying a tax delinquent owner any mercantile license, including a license for the rental of real property for a tenant-operated business."

> [*Id.,* at 474–475, 616 *A.*2d 1331.]

As earlier indicated, Holmdel Township Ordinance No. 90–28 states that it was adopted to implement *N.J.S.A.* 40:52–1.2, which statute provides, in relevant part, as follows:

[e]xcept as provided herein, the governing body of a municipality may, by ordinance, as a condition for the issuance ... of any license or permit issued by, or requiring the approval of, the municipality, require that the applicant, if he is the owner thereof, pay any delinquent property taxes or assessments on the property wherein the business or activity for which the license or permit is sought or wherein the business or activity is to be conducted.... The provisions of this section shall not apply to or include any alcoholic beverage license or permit issued pursuant to the "Alcoholic Beverage Control Act."

R.S. 33:1–1 et seq.

The court in *Ocean Cty. Realtor Bd.* mentions this statute twice in its opinion, but concluded, correctly, that the statute was being applied to individual residential sales, among other activities, and not simply commercial transactions. While the plaintiffs had an obvious interest, as real estate brokers, in consummation of the sales and, in some cases, paid the delinquent charges to secure certificates of occupancy for their sellers, the simple fact is that they were not the owners of the properties in question, were not the delinquent taxpayers and did not seek certificates for their own properties. Moreover, it could hardly be argued that an individual residential sale was a commercial business or activity on the property or the license or permit was necessary for a business or activity to be conducted. Yet, the individual property owner would be held captive to this business activity oriented statute, if the defendant municipalities' argument were accepted as to their right to insist upon tax payments by all under such a statute.

In *Wildwood Storage, supra*, the plaintiff had argued, successfully, to the trial court that the rental of property was not subject to the statute, arguing the statute applied only, in effect, to "owner-operated" businesses. *Wildwood Storage, supra*, 260 *N.J.Super.* at 470, 616 *A.2d* 1331. As the Appellate Division further concluded, "[t]he [trial] judge appeared to think that the statute should only apply where viable businesses owned and operated by the property owner flourished on the properties." *Id.* at 472, 616 *A.2d* 1331. In reaching a contrary conclusion, the appellate court set forth the appropriate rationale:

... *N.J.S.A.* 40:52–1.2 is an enabling statute which delegates State authority to municipalities. In this regard, *N.J.Const.* art. IV, § 7, ¶ 11 states that "any law concerning municipal corporations ... shall be liberally construed in their favor."

... Generally, our courts are cautious in finding a delegation of authority to municipalities, but once that delegation is manifest, we opt for liberal interpretation. In the present case there is no doubt that the State delegated authority to municipalities by enacting *N.J.S.A.* 40:52–1.2. Because this delegation of power to compel tax payment is clear, we should not interpret it grudgingly.

. . . .

The legislature intended to prevent delinquent taxpayers from profiting at the expense of the municipality. . . .

The inescapable conclusion is that *N.J.S.A.* 40:52–1.2 was intended to mirror MLUL provisions [*N.J.S.A.* 40:52–39e and –65h]. *N.J.S.A.* 40:52–1.2 must be interpreted so that property owners will not benefit from the services of the municipality without paying their taxes. Indeed, when taxes are not paid and the delinquency rate rises, responsible taxpayers are compelled to shoulder an unfair, higher tax burden through increased rates. *The legislative purpose was to allow municipalities to prevent the business use or development of real estate when the owner does not discharge the responsibility of paying taxes.* The ruling in the Law Division severely crimps this design. . . .

[*Id.,* at 472–473, 616 *A.*2d 1331 (emphasis added) (citations omitted).]

■ In construing the legislative intent, the court must consider the statutory language, the nature of the subject matter, the contextual setting, the policy behind the statute, the statutes *in pari materia* and the concept of reasonableness. *County of Essex v. Waldman,* 244 *N.J.Super.* 647, 656, 583 *A.*2d 384 (App.Div. 1990), *certif. denied* 126 *N.J.* 332, 598 *A.*2d 890 (1991).

In the present case, we are not concerned with an overbroad ordinance or its application to residential property owners, unlike the circumstances in *Ocean Cty. Realtor Bd., supra.* However, like the business activity in *Wildwood Storage,* i.e. the business only of renting properties, we are concerned here with the plaintiffs' business activity, i.e. the business of the sale of developed properties for residential use. Plaintiffs are the owners, the delinquent taxpayers and the entities who need zoning permits for the conduct of their business as to the specific properties in question. Without these permits, eventual sales for profit could not be achieved. In summary, the present matter poses a very different situation from that in *Ocean Cty. Realtor Bd.,* as to the application of *N.J.S.A.* 40:52–1.2, beyond the fact that the issue concerns a zoning permit and not a certificate of occupancy. There is nothing in this statute or, as discussed, the Uniform

Construction Code Act, that warrants an exemption beyond that provided for construction and alcoholic beverage control law licenses or permits. Moreover, no evidence has been presented to this court that this ordinance has been applied contrary to the legislative intent discussed above.

In addition, defendants rely upon a "statute *in pari materia*," in support of their position, *i.e.* N.J.S.A. 40:55D–65h, which provides that a zoning ordinance may "[r]equire as a condition for any approval which is required pursuant to such ordinance and the provisions of this chapter, that no taxes or assessments for local improvements are due or delinquent on the property for which any application is made." Defendant Township has implemented this statute with the adoption of Subsection 78–16G of the Development Regulations.[6] Both *Home Builders League* and *Ocean Cty. Realtor Board, supra,* are irrelevant as to the application of this statute.

While the rules of statutory construction are tools, not icons, *Gangemi v. Berry,* 25 *N.J.* 1, 11, 134 *A.2d* 1 (1957), the history of a legislative enactment can be very helpful. *Cedar Cove, Inc. v. Stanzione,* 122 *N.J.* 202, 211, 584 *A.2d* 784 (1991).

In 1979, the subject statute was amended to delete "by the zoning board of adjustment," following the words "condition for any approval," and to substitute the words "which is required pursuant to such ordinance and the provisions of this chapter."

---

[6] Plaintiffs argue that this provision impermissibly attempts to control also the issuance of a building permit or certificate of occupancy, conditioning such matters upon the payment of delinquent real property taxes. Likewise, the enforcement of tax collection requirements is provided for in Township Ordinance No. 90–28 through the denial of Uniform Construction Code permits, certificates of occupancy and water and sewer permits. The specific issue before the court concerns only the denial of zoning permits, as applied to these specific plaintiffs. The time to facially challenge either of these ordinances has long expired. *R.* 4:69–6. Moreover, it cannot be denied that as to clearly severable provisions in these ordinances, "judicial surgery" is always a possibility, *but only when relevant to the issues presented to the court and actually in dispute. Town Tobacconist v. Kimmelman,* 94 *N.J.* 85, 104, 462 *A.2d* 573 (1983).

The court must conclude there was purpose and meaning for this amendment. *Gualano v. Board of School Estimate of Elizabeth School Dist.,* 39 *N.J.* 300, 313, 188 *A.*2d 569 (1963); *Cold Indian Springs Corp. v. Ocean Tp.,* 154 *N.J.Super.* 75, 95, 380 *A.*2d 1178 (Law Div.1977), *aff'd* 161 *N.J.Super.* 586, 392 *A.*2d 175 (App.Div. 1978), *aff'd,* 81 *N.J.* 502, 410 *A.*2d 652 (1980).

Furthermore, the Legislature chose not to limit the scope of this amendment to certain "approvals," like those specified in *N.J.S.A.* 40:55D–39e. It also chose not to utilize the limiting language of "application for development" as defined in *N.J.S.A.* 40:55D–3 for the approvals to be covered by this provision.

As discussed, a zoning permit is provided for both in statute and the implementing ordinance. Is a zoning permit within the category of any "approval" that can be required by a zoning statute and ordinance?

Certainly, *N.J.S.A.* 40:55D–7 supports the conclusion that the issuance of a zoning permit is such an approval. Its issuance, following review, is predicated on the zoning officer's determination "that such use, structure or building *complies with the provisions of the municipal zoning ordinance* or variance. ..." *Id.* (emphasis added).

While a zoning permit may serve, effectively, to acknowledge, if not memorialize, earlier action by a municipal agency as to a variance approval, it independently can serve as the zoning officer's certification of zoning compliance. Moreover, the denial of such an administrative "approval" is appealable to the board of adjustment pursuant to *N.J.S.A.* 40:55D–70a. To conclude that the words before and after the word "or" in *N.J.S.A.* 40:55D–7 should be construed to mean the "same thing," would, indeed, make the statutory provisions a redundancy. *Wildwood Storage, supra,* 260 *N.J.Super.* at 471, 616 *A.*2d 1331.

Moreover, given the obvious intent of this enactment, there is no reason to "interpret it grudgingly." *Id.* at 472, 616 *A.*2d 1331. It serves the same purpose as *N.J.S.A.* 40:52–1.2. In the final analysis, there is no basis to avoid the obvious impact of its plain

language. *Vreeland v. Byrne,* 72 *N.J.* 292, 302, 370 *A.*2d 825 (1977). The fact that the one-time issuance of a zoning permit conditioned upon delinquent taxes being paid does not assure future timely tax payments, is only to argue that the Legislature could have provided a more comprehensive remedy, and not that no remedy for tax delinquency was provided in order to receive this particular permit.

Finally, at the return date hearing, plaintiffs argued that since, as part of their earlier subdivision and site plan approvals, their development projects had to undergo a zoning review, the need to make application for and receive thereafter a zoning permit is a needlessly repetitive exercise.

The simple answer would be that this is a legislative issue that has been addressed in statute and municipal ordinance, and if a further legislative response is desired, or necessary, it is not the role of the court to take action in this regard. *Unsatisfied Claim and Judgment Fund Bd. v. New Jersey Manufacturers Ins. Co.,* 270 *N.J.Super.* 311, 317, 637 *A.*2d 191 (App.Div.1994), *aff'd* 138 *N.J.* 185, 649 *A.*2d 1243 (1994).

However, as already discussed, there exists an obviously rational basis for requiring a zoning permit before a construction permit is issued. An approved site plan, like variance relief granted, does not assure, for example, that the detailed construction plan will comport with this earlier approval in terms of zoning requirements. The zoning permit plays the important role of monitoring the approval. Such an approval is not "open-ended." *Alpine Tower v. Mayor & Council,* 231 *N.J.Super.* 239, 555 *A.*2d 657 (App.Div.1989).

As was stated in *Frankel v. C. Burwell, Inc.,* 94 *N.J.Super.* 53, 59, 226 *A.*2d 748 (Law Div.1967), "[i]t would seem to be fundamental that a building erected pursuant to a variance must be substantially the building for which a variance was granted." *See Alpine Tower, supra,* 231 *N.J.Super.* at 247, 555 *A.*2d 657. Moreover, as indicated earlier, *N.J.S.A.* 52:27D–131 requires, under the "prior approval" rule, that before a construction permit is

issued there be evidence of compliance with "the requirements of other applicable laws and ordinances." The zoning permit rationally serves this purpose as to zoning requirements. *See J.P. Properties, Inc., supra,* 183 *N.J.Super.* at 577, 444 *A.*2d 1131.[7]

In conclusion, the defendant zoning officer's actions were neither arbitrary, capricious nor unreasonable in conditioning the issuance of zoning permits on compliance with either the valid Township Ordinance No. 90–28 or Subsection 78–16G of the Development Regulations. The complaint is dismissed.[8]

---

[7] Plaintiffs concede that there may be a need for a zoning permit for projects not requiring site plan, subdivision or variance approvals. This concession, however, only emphasizes the legislative nature of their complaints.

[8] The Second Count of the Verified Complaint sought damages under 42 *U.S.C.A.* § 1983, against the defendant Township and its Township Committee, predicated upon the claimed invalid actions of the defendant zoning officer in conditioning the issuance of zoning permits on the payment of delinquent taxes under the challenged ordinances. In view of the court's determination as to the ordinances in question, this claim is moot. Nor need there be consideration of the legislative immunities that would insulate the legislative body in enacting the ordinances in question. *See however, Timber Properties, Inc. v. Chester Tp.,* 205 *N.J.Super.* 273, 284, 500 *A.*2d 757 (Law Div.1984).