175 N.J. Super. 624 (1980)
421 A.2d 616
TOWNSHIP OF BURLINGTON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
MIDDLE DEPARTMENT INSPECTION AGENCY, INC., GARDEN STATE ELECTRIC INSPECTION SERVICE, INC., BUILDING INSPECTION UNDERWRITERS, INC., MIDDLE ATLANTIC ELECTRIC INSPECTION, INC. AND GENERAL INSPECTION SERVICES, INC., CORPORATIONS OF THE STATE OF NEW JERSEY, AND STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division Burlington County.
Decided August 28, 1980.
*627 Frederick W. Hardt for plaintiff (Sever and Hardt, attorneys).
Richard A. Levao for defendant Middle Department Inspection Agency, Inc. (Shanley and Fisher, attorneys).
Robert G. Holston for defendant General Inspection Services, Inc. (Holston, Holston and MacDonald, attorneys).
Peter E. Markens, Deputy Attorney General, for defendant State of New Jersey (John J. Degnan, Attorney General, attorney).
GOTTLIEB, J.J.D.R.C. (temporarily assigned):
This declaratory judgment action squarely presents the issue of whether a municipality which chooses to administer the State Uniform Construction Code by contracting with an approved agency for electrical subcode inspection and enforcement services is required to award such a contract by competitive public bidding. Plaintiff Township of Burlington submits that bidding is not required since the inspection services are either "professional services" or are "extraordinary unspecifiable services" ("EUS") under the Local Public Contracts Law, N.J.S.A. 40A:11-1 et seq.
Before reaching the merits of the issue, one procedural problem must be discussed. One of the stipulated facts is that the cost of the services will exceed $2,500. Since N.J.S.A. 40A:11-3 permits contracts to be entered into by a contracting unit without public advertising for bids when the cost does not exceed $4,500 in the fiscal year, it would seem that there may not exist a justiciable controversy so that this court ought not to act. In acting on causes asserted under the Uniform Declaratory Judgment Act, N.J.S.A. 2A:16-50 et seq., the court must be mindful that the act "cannot be used to decide or declare rights or status of parties upon a state of facts which are future, contingent and uncertain." Lucky Calendar Co. v. Cohen, 36 N.J. Super. 300, 304 (Law Div. 1955), aff'd 20 N.J. 451, 454 (1956). In this case the court cannot be certain that the $4,500 has or will be reached during the fiscal year and, absent more, would *628 decline to render an advisory opinion. However, under N.J.S.A. 40A:11-6.1, contracts which do not meet the $4,500 threshold are not to be awarded until the contracting agent has solicited quotations, whenever practicable, where "the estimated cost or price of which is $500 or more" and the award is to be made "on the basis of the lowest responsible quotation received, which quotation is most advantageous to the contracting unit, price and other factors considered." This latter statute does, nevertheless, exempt contracts calling for "the performance of professional services."
It is clear, therefore, that since the $500 level has already been reached, the township is presented with a justiciable problem: to assert that the inspection services are "professional services" and relieved of the quotation requirements of N.J.S.A. 40A:11-6.1 or concede that inspection services do not qualify as "professional services" and subject them to the procedures mandated by N.J.S.A. 40A:11-6.1. In recognition of the determination that the Uniform Declaratory Judgment Act is "remedial in nature and entitled to liberal construction and administration," Union Cty. Freeholder Bd. v. Union Cty. Park Comm'n, 41 N.J. 333, 336 (1964), and, as such, is to be construed as "afford[ing] relief from uncertainty to a person's rights," N.J. Home Bldrs. Ass'n v. Civil Rights Div., 81 N.J. Super. 243, 251 (Ch.Div. 1963), this court will exercise its discretion and hear the matter. Passaic Valley Sewerage Comm'n v. Paterson, 113 N.J. Super. 148, 151 (App.Div. 1971). "[T]he remedy [of a declaratory judgment] should not be denied lightly, and where a complaint discloses a justiciable controversy within the statute normally it ought to be entertained." Condenser Serv. & Engin. Co., Inc. v. American Mut. Liab. Ins. Co., 45 N.J. Super. 31, 43 (App.Div. 1957).
Under the State Uniform Construction Code Act, N.J.S.A. 52:27D-119 et seq., municipalities are required to administer and enforce the Code. N.J.S.A. 52:27D-126. They can implement this function in one of three ways: (1) by employing a qualified construction official and subcode officials, N.J.S.A. 52:27D-126(a); (2) by using an approved inspection authority, N.J.S.A. *629 52:27D-126(a); or (3) by requesting that the Department of Community Affairs assume the task, N.J.S.A. 52:27D-128. Of course, there are many variations possible; since there are many subcodes constituting the Uniform Construction Code-the building, plumbing, electrical, energy, fire prevention, mobile home and mechanical subcodes, N.J.S.A. 52:27D-123(b)-a municipality may choose, for example, to employ qualified personnel to administer and enforce all of the subcodes except plumbing and electrical, and use an approved inspection authority for those two codes.
In Burlington Township's particular case it has determined that it would perform the administration and enforcement of the entire code by employees save for the electrical code. In regard to the electrical code, it has determined to contract with an approved inspection agency to administer and enforce that code. The township is also in receipt of certain rules promulgated by the Division of Local Government Services essentially providing that, as relevant, contracts with approved inspection agencies are not contracts for "professional services" or an EUS. As such, they are not exempt from the competitive public bidding process or the quotation process required under N.J.S.A. 40A:11-4 or 6.1. The Division of Local Government Services is directly empowered by N.J.S.A. 40A:11-5(1)(a)(ii) to adopt rules and regulations administering the implementation of EUS contracts by local units. Under the Local Fiscal Affairs Law, N.J.S.A. 40A:5-1 et seq., the Division of Local Government Services receives and reviews the annual fiscal audit of a local unit, which audit is to report on and make recommendations concerning compliance by the local unit with applicable statutes and regulations. Nevertheless, the Division's rules pertaining to what qualifies as a "professional service" are not binding on a municipality. This was recognized by the Division itself when it issued its "Local Public Contract Guidelines and Local Public Contract Regulations" (1977), which indicates on the introductory page that the guidelines are "advisory" while the regulations are "mandatory."
*630 The township is of the opinion that the contract for electrical subcode administration and enforcement by an approved inspection agency is not subject to competitive public bidding or, at least, quotation. Hence, this declaratory judgment action was instituted so that the township might have its rights and obligations judicially determined. See, N.J.S.A. 2A:16-53; Bergen Cty. v. Port of N.Y. Auth., 32 N.J. 303, 307 (1960); and Registrar and Transfer Co. v. Division of Tax. Director, 166 N.J. Super. 75, 78 (App.Div. 1979). The various defendants include the State of New Jersey and the approved electrical inspection authorities providing services in Burlington County. Both the township and the State have moved for summary judgment. All of the facts have been stipulated so the motions are ripe for decisions. R. 4:46-2.
The court must determine whether the inspection services to be performed by an approved authority are either "professional services" or EUS. If they are professional services, the contracts are not subject to competitive public bidding. However, if the court determines that they are properly characterized as being EUS, then their award would be subject to N.J.S.A. 40A:11-6.1. If they are neither, then their contracts must be awarded in compliance with the Local Public Contracts Law by competitive public bidding (if exceeding $4,500) or the obtaining of quotations (if between $500 and $4,500).
"Professional services" are defined in N.J.S.A. 40A:11-2(6) as:
[S]ervices rendered or performed by a person authorized by law to practice a recognized profession, whose practice is regulated by law, and the performance of which services requires knowledge of an advanced type in a field of learning acquired by a prolonged formal course of specialized instruction and study as distinguished from general academic instruction. Professional services may also mean services rendered in the performance of work that is original and creative in character in a recognized field of artistic endeavor.
Excluding for purposes of this discussion that aspect of the definition relating to creative work (for example, a playwright, a composer, a sculptor, etc.), it is clear that there are three components for qualification as a "professional service," all of which must be fulfilled. These are that (1) the services are to be rendered or performed by a person authorized by law *631 to practice a recognized profession; (2) that person's practice is regulated by law and (3) the performance of the services requires knowledge of an advanced type in a field of learning acquired by a prolonged formal course of specialized instruction and study as distinguished from general academic instruction or apprenticeship and training.
It is appropriate to now examine the statutes and regulations concerning electrical subcode officials to attempt to ascertain if these three definitional features are met. The statutes and regulations unfortunately do not define "profession." However, guidance is provided by various court decisions. For example, "the practice of law is a profession and not a business," In re Rothman, 12 N.J. 528, 548 (1953); as is also medicine, Auerbacher v. Smith, 19 N.J. Super. 191, 195 (Ch.Div. 1952). An auditor, Heston v. Atlantic City, 93 N.J.L. 317, 319 (Sup.Ct. 1922), and an architect, Furlong v. Newark Housing Auth., 132 N.J. Eq. 341, 343 (Ch.Div. 1942), are also professionals. On the other hand, an undertaker or funeral director is not a professional, but is engaged in a business. Frizen v. Poppy, 17 N.J. Super. 390, 393 (Ch.Div. 1952). As noted in Atlantic Mut. Ins. Co. v. Continental Nat'l Amer. Ins. Co., 123 N.J. Super. 241, 246 (Law Div. 1973), the essence of a professional service is that it involves "specialized knowledge, labor or skill and the labor or skill is predominantly mental or intellectual, rather than physical or manual." (Emphasis in original). Fulfilling the logic of this distinction is Autotote Ltd. v. N.J. Sports Auth., 171 N.J. Super. 480, 491 (App.Div. 1979), which held that the installation and servicing of betting machines was not a "professional service." While present-day society is not at all reluctant to generally accord most individuals functioning in the community with a professional-sounding title in order to afford them a greater personal feeling of dignity and self-esteem, this worthy motive cannot serve to alter the basic definition of "profession." A "profession" inherently requires attainments in special knowledge as distinguished from mere skill. Without demeaning an electrical subcode official, I cannot agree with the township that this core definitional standard is satisfied.
*632 Indeed, this conclusion is reinforced by considering the third of the other two components of the statutory definition of "professional services." Although it is true that an electric subcode official is licensed, see N.J.S.A. 52:27D-124(g)(2) and N.J.A.C. 5:23-5.1 et seq., nonetheless it cannot similarly be concluded that the third element is met. N.J.A.C. 5:23-5.5(b)(2) delineates the qualifications to be attained:
Subcode officials: A candidate for a license as a building, electrical, fire protection or plumbing subcode official H.H.S., I.C.S. or R.C.S. shall meet the following qualifications:
i. Possession of the qualifications established herein for a technical inspector license in at least the same specialty as the subcode official license being applied for; and
ii. Successful completion of an approved subcode official educational program established in N.J.A.C. 5:23-5.6 prior to application; and
iii. Completion of such additional experience as may be required, beyond that needed for licensure as a technical inspector, to provide at least the following total experience:
(1) Ten years in construction, design or supervision as a journeyman in a skilled construction trade currently regulated by the Uniform Construction Code; or ten years as a technical inspector; or ten years as a construction contractor in a field of construction currently regulated by the construction code; or
(2) Five years of experience in construction, design or supervision as an architect or engineer engaged in building construction work, provided that such person possess at least a bachelor's degree in architecture or engineering from an accredited institution of higher education; or
(3) Three years of experience in construction, design or supervision as a licensed engineer or registered architect, provided that such person possess a license as an engineer or architect issued by the State of New Jersey at the time of application.
Subsection (ii) refers to an educational program established in N.J.A.C. 5:23-5.6. N.J.A.C. 5:23-5.6(d)(11) requires that a candidate meet an educational requirement of at least 45 contact hours in the areas of administration, legal aspects of code enforcement and related legislation. Realistically, 45 contact hours of instruction cannot be said to be a "prolonged formalized course of specialized instruction and study." Comparing it to courses taught at the undergraduate level, it would be the equivalent of less than ten college credits, which generally require at least 20 contact hours for three credits. The other qualifications essentially relate to attainment of skills as opposed to specialized knowledge. Of course, any but the most *633 fundamental skills requires that a certain amount of intellectual activity be utilized. But where the stress is on the practical skill, as opposed to the more abstract conceptual knowledge, it cannot be said that it meets the statutory standard. While the State has embarked upon the laudable road toward upgrading of the quality of code enforcement officials, this has not resulted in making their services "professional services" in nature. It would be inappropriate to subvert the policy in favor of competitive public bidding on this basis. There is nothing inherent in this process which would nullify or detract from the quality of the services being sought. Capasso v. Pucillo, 132 N.J. Super. 542, 550 (Ch. and Law Divs. 1974).
Accordingly, I conclude that the position of electrical subcode official, when sought to be filled by an approved inspection agency, is not a "professional service" within the intent of the Local Public Contracts Law.
Although the court might decline to discuss the question of whether the position qualifies under the EUS provision because N.J.S.A. 40A:11-6.1 would not be applicable, I will exercise my discretion and proceed on. I am reluctant to restrict myself to give merely half of an answer solely because that is all that is really a justiciable controversy. It seems incongruous to the court to be so limited in light of the statutorily expressed purpose of the Uniform Declaratory Judgments Law: "to settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." N.J.S.A. 2A:16-51. I am mindful of the public importance of having this issue resolved and conclude that I should so exercise my discretion.
Having concluded that the electric subcode inspection services are not a "professional service" and, thus, exempt from competitive public bidding under N.J.S.A. 40A:11-5 or from the solicitation of quotations under N.J.S.A. 40A:11-6.1, the next point to be considered is whether they qualify as an EUS. The term EUS is defined in N.J.S.A. 40A:11-2(7) as "services which are specialized and qualitative in nature requiring expertise, extensive training and proven reputation in the field of endeavor." *634 N.J.S.A. 40A:11-5(1)(a)(ii) requires that "[t]he application of this exception [from competitive public bidding] shall be construed narrowly in favor of open competitive bidding, where possible" and authorizes the Division of Local Government Services "to adopt and promulgate rules and regulations limiting the use of this exception in accordance with the intention herein expressed." As noted before, the Division has promulgated these regulations which, under the authority of N.J.S.A. 40A:11-5, are binding upon local agencies and the court.
N.J.A.C. 5:30-14.2 contains the rules and regulations implementing N.J.S.A. 40A:11-5(1)(a)(ii). The township submits that since the regulations impose requirements in addition to those provided by statute, the regulations are invalid. This argument is premised upon the contention that the statutory definition establishes three elements characterizing an EUS while the regulations assertedly use four. Thus, N.J.S.A. 40A:11-2(7) indicates the meaning as "services which are specialized and qualitative in nature requiring expertise, extensive training and proven reputation in the field of endeavor" while N.J.A.C. 5:30-14.2(b)(4) indicates that "[i]f specifications can be drafted covering the services, then they must be bid, notwithstanding that the other criteria of the definition may be met."
The township contends that this is an impermissible administration expansion of a declared legislative policy, that policy being memorialized in the statutory definition. While the courts have not been reluctant to preclude administrative agencies from occasional sallies beyond declared statutory policy (see, for example, In re Increase in Fees by N.J. St. Bd. of Dentistry, 166 N.J. Super. 219, 223 (App.Div. 1979), and Jaffe, Judicial Control of Administrative Action (1965)), I cannot conclude that that situation exists here. N.J.S.A. 40A:11-5(1)(a)(ii) expressly directed the Division of Local Government Services to adopt regulations limiting the use of the EUS exception to competitive public bidding in accordance with the intention that it be "construed narrowly in favor of open competitive bidding." The *635 restriction contained in N.J.A.C. 5:30-14.2(b)(4) is not a part of the definition of an EUS. Rather, it is an attempt to limit the use to encourage competitive public bidding. The regulation does not contravene a legislative policy, it implements it as directed. This is borne out by the statutory definition which uses the term "qualitative." "Qualitative" intrinsically means that it is not capable of measurement, of accurate written expression. Thus, if specifications can be drafted properly, the service cannot be said to be "qualitative." The services are specifiable if they can be reflected precisely in exact specifications. As such, they are not "unspecifiable." The regulation solely clarifies and construes the exemption, but does not alter it.
In regard to the inquiry whether specifications can be drafted covering the services, the township candidly agrees that this can be accomplished. Indeed, there has been submitted an affidavit from the supervising program development specialist in the Division of Local Government Services indicating a number of municipalities in this State-Cherry Hill Township, Pennsauken Township, Ridgewood Village, White Township, Willingboro Township and Winslow Township-have prepared specifications and have publicly bid the technical inspection services in issue. The court has received copies of these specifications; it is beyond question that they can be drafted. The township does not dispute this conclusion.
Accordingly, I also conclude that the function of an electrical subcode official which is to be conducted by an approved agency is not an "extraordinary unspecifiable service." As such, it is subject to the competitive bidding process if it exceeds $4,500 or the quotation process if it exceeds $500 but not $4,500.
Summary judgment will be granted in favor of defendant State; however, under the circumstances, I will not also allow costs.