IN THE MATTER OF THE TOWNSHIP OF CHERRY HILL, 820 MERCER STREET, CHERRY HILL, NEW JERSEY, APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted April 7, 1987—Decided April 27, 1987.

Before Judges MICHELS, SKILLMAN and LANDAU.

*Ralph J. Kmiec,* attorney for appellant (*Nancy E. Scott,* on the brief).

*W. Cary Edwards,* Attorney General, attorney for respondent (*Michael R. Clancy,* Deputy Attorney General, of counsel and *Daniel P. Reynolds,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

The Department of Community Affairs issued a cease and desist order to the Township of Cherry Hill, which prohibited the Township from selecting a private inspection agency for electrical subcode services under the Uniform Construction Code Act, *N.J.S.A.* 52:27D–119 *et seq.,* except in conformity with the Department's regulations, *N.J.A.C.* 5:23–4.5A. This order was based on a finding that the Township's request for proposals for electrical code services included an unauthorized selection criterion, namely, an invitation to private inspection agencies to offer the Township computer services beyond those required for electrical subcode services. The Township appeals from this order. It argues that the Department's regulations merely offer an "administrative alternative" to public bidding in accordance with the Local Public Contracts Law, *N.J.S.A.* 40A:11–1 *et seq.,* for selection of a private inspection agency. We conclude that a municipality which elects to use a private inspection agency to carry out its responsibilities under the Uniform Construction Code Act must strictly adhere to the selection criteria set forth in *N.J.A.C.* 5:23–4.5A, and that those criteria prohibit a municipality from inviting private agencies to compete for a municipal contract by offering financial inducements. Therefore, we affirm.

■ The State Uniform Construction Code Act, enacted in 1975, is "a broad, remedial piece of legislation, the basic purpose of which is to establish and provide for uniform building and construction standards and uniform enforcement policies

and practices throughout the entire State." *N.J. State Plumbing Inspectors Ass'n v. Sheehan,* 163 *N.J.Super.* 398, 401 (App.Div.1978), certif. den. 79 *N.J.* 484 (1979). Accordingly, the Act preempts municipalities from providing for construction code enforcement in a manner inconsistent with the Act and its implementing regulations. *Home Builders League of South Jersey v. Evesham Tp.,* 174 *N.J.Super.* 252, 260–261 (Law Div.1980).

Municipalities are permitted to administer the construction code in three different ways: (1) by employing qualified construction officials and subcode officials, *N.J.S.A.* 52:27D–126(a); (2) by using an approved private inspection agency, *N.J.S.A.* 52:27D–126(a); or (3) by asking the Department to assume this responsibility, *N.J.S.A.* 52:27D–128. This case involves the second of these alternatives, *i.e.,* use of a private inspection agency.

The means by which municipalities may select private inspection agencies and the fees these agencies are allowed to charge became a matter of concern following enactment of the Uniform Construction Code Act. In 1980 the Assembly Municipal Government Committee issued a report on the administration of the construction code which included the following comments regarding private inspection agencies and inspection fees:

One of the charges leveled against the Uniform Construction Code Act in hearings before this Committee is that contrary to its basic intent, it has contributed directly to increased construction costs. Witnesses testified to the following: (a) certain municipalities have inflated fees to generate revenues far in excess of the local enforcing agency operating costs; (b) wide variations now exist in the fees which municipalities impose for providing identical services; (c) the regulation of electrical inspection by municipal enforcing agencies—previously a function of the State Public Utilities Commission—has burdened small electrical contractors with additional costs; (d) contracts between municipalities and private electrical inspection agencies, established through competitive bidding procedure, have contributed to substantial fee increases.

    *     *     *     *     *     *     *     *

[Some] municipalities arbitrarily set fees and request that third party agencies bid a "percentage" of those fees with the municipality retaining the difference. This procedure results in unnecessarily high fees. Such fees should be "rolled

back" by the Department. If fee schedules remain excessively high, the Department should be granted the authority, as the Public Utilities Commission before it, to set a statewide fee structure for third party inspections.

The Legislature responded to these concerns by enactment of chapter 338 of the Laws of 1983, which confers pervasive power upon the Department to establish standards for the selection of private inspection agencies and to fix the fees which these agencies may charge. This amendment authorized the Commissioner of Community Affairs to adopt regulations providing for:

(1) Setting the amount of and the charging of fees to be paid to the department by a private agency for the review of applications for and the issuance of approvals authorizing a private agency to act as an on-site inspection and plan review agency or an in-plant inspection agency;

(2) The setting of the amounts of fees to be charged by a private agency for inspection and plan review services; provided, however, that such fees shall be identical to those adopted and charged by the department when it serves as a local enforcement agency pursuant to section 10 of P.L. 1975, c. 217 (C. 52:27D–128); and

(3) The formulation of standards to be observed by a municipality in the evaluation of a proposal submitted by a private agency to provide inspection or plan review services within a municipality. [*N.J.S.A.* 52:27D–124(i)].

Pursuant to this grant of power, the Commissioner adopted regulations which provide detailed requirements for the selection of private inspection agencies. *N.J.A.C.* 5:23–4.5A. Each agency authorized by the Department to perform such services must be notified of a municipality's intent to enter into a contract with a private inspection agency. *N.J.A.C.* 5:23–4.-5A(b). All proposals must be in writing and must contain 13 items of required information. *N.J.A.C.* 5:23–4.5A(d)(1)–(13). The actual selection of a private inspection agency must be based on the following criteria: (1) the speed with which the agency can respond to requests for required inspections from the construction industry; (2) the speed with which it can perform plan reviews; (3) the technical qualifications of its staff; (4) the thoroughness with which the agency can carry out its work; (5) the adequacy of the arrangements for emergency inspection services; and (6) the agency's ability to ensure the control and direction of its staff. *N.J.A.C.* 5:23–4.5A(e)(1)–(6). The Commissioner also adopted regulations which estab-

lish the specific inspection fees a private agency must charge a municipality. *N.J.A.C.* 5:23–4.18(1). Thus the regulations adopted by the Commissioner require municipalities to select private inspection agencies based solely on the quality of services they provide and not on financial considerations.

■ We conclude that *N.J.A.C.* 5:23–4.5A and *N.J.A.C.* 5:23–4.18(1) represent reasonable exercises of the regulatory authority conferred upon the Commissioner of Community Affairs by *N.J.S.A.* 52:27D–124(i). We are satisfied that the Commissioner reasonably could have concluded that allowing price competition among private inspection agencies seeking municipal contracts might encourage municipalities to select agencies on grounds other than qualifications and also might lead private agencies to cut corners in providing inspection services in order to be able to bear the expense of providing financial inducements to municipalities. Thus, the Township has failed to demonstrate any unreasonableness in the Department's standards. Furthermore, the omission from the standards of any reference to cost is directly supported by *N.J.S.A.* 52:27D–124(i)(2), which requires the fees established for private inspection agencies to be "identical to those adopted and charged by the department when it serves as a local enforcement agency."

■ The Township's claim that it may select a private inspection agency by a process of public bidding in which agencies may offer financial inducements, such as providing computer services for municipal purposes unrelated to their own inspection work, is inconsistent with the provisions of *N.J.S.A.* 52:27D–124(i) and its implementing regulations, which prescribe fixed fees for inspection services and require a private inspection agency to be selected based solely on the quality of its services. *Cf. Burlington Tp. v. Middle Dep't Inspection Agency,* 175 *N.J.Super.* 624 (Law Div.1980) (holding prior to the enactment of *N.J.S.A.* 52:27D–124(i) that the public bidding requirements of Local Public Contracts Law applied to the selection of private inspection agencies). Moreover, to the

extent there may be any inconsistency between the public bidding provisions of the Local Public Contracts Law and *N.J.S.A.* 52:27D–124(i), the latter statute would be controlling because it deals specifically with the selection of private inspection agencies. *See Kingsley v. Wes Outdoor Advertising Co.,* 55 *N.J.* 336, 339 (1970).

In any event, by enactment of chapter 61 of the Laws of 1986, the Legislature expressly exempted "[o]n-site inspections undertaken by private agencies pursuant to the 'State Uniform Construction Code Act' and the regulations adopted pursuant thereto," from the competitive bidding requirements of the Local Public Contracts Law. *N.J.S.A.* 40A:11–5(1)(r). The committee statement to this legislation describes its purpose as follows:

> However, section 6 of the "Uniform Construction Code Act," P.L. 1975, c. 217 (C. 5:27D–124) was recently amended to require the Department of Community Affairs to adopt regulations setting third-party on-site inspection fees (P.L. 1983, c. 338). The department is also authorized to promulgate standards to be observed by a municipality when reviewing a proposal from a private agency. Thus, the sponsor feels that there is no longer any need to protect the public interest by requiring public bidding for these services.

Consequently, even if there had been a conflict previously between the public bidding requirements of the Local Public Contracts Law and *N.J.S.A.* 52:27D–124(i), this conflict was eliminated by the enactment of chapter 61. This amendment applies to any future contract for inspection services the Township might award, and hence it governs this appeal of a cease and desist order which is prospective in operation. *See S & L Associates, Inc. v. Washington Tp.,* 35 *N.J.* 224 (1961).

Therefore, the Department of Community Affairs properly ordered the Township to cease and desist from inviting private inspection agencies to submit bids which include proposals for providing free computer services which are unrelated to electrical code services.

Affirmed.