651 A.2d 1060

MIDDLE DEPARTMENT INSPECTION AGENCY, INC., AND GARDEN STATE ELECTRICAL INSPECTION SERVICES, INC., APPELLANTS, v. NEW JERSEY DEPARTMENT OF COMMUNITY AFFAIRS, DIVISION OF HOUSING AND DEVELOPMENT, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 4, 1995—Decided January 24, 1995.

Before Judges BRODY, LONG and PAUL G. LEVY.

*Richard A. Levao* argued the cause for appellant Middle Department Inspection Agency, Inc. (*Shanley & Fisher,* attorneys; *Mr. Levao* and *Joseph M. Cerra,* on appellants' joint brief).

*Stephen J. Edelstein* argued the cause for appellant Garden State Electrical Inspection Services, Inc. (*Schwartz, Simon, Edelstein, Celso & Kessler,* attorneys; *Mr. Edelstein* and *Pamela T. Hanback,* on appellants' joint brief).

*Daniel P. Reynolds,* Deputy Attorney General, argued the cause for respondent (*Deborah T. Poritz,* Attorney General, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Mr. Reynolds,* on the brief).

*Hutt & Berkow,* attorneys for Amicus Curiae New Jersey Builders Association (*Stewart M. Hutt,* of counsel and on the brief; *Susan R. Kaplan,* on the brief).

The opinion of the court was delivered by

BRODY, P.J.A.D.

Appellants, private inspection and plan review agencies, challenge the validity of certain amendatory regulations adopted by the Commissioner of the Department of Community Affairs (Department) pursuant to *N.J.S.A.* 52:27D–124i(2) (the statute), a section of the State Uniform Construction Code Act, 52:27D–119 *et seq.* The Code offers municipalities four choices when selecting people to review construction plans and to make code or subcode building inspections. One choice is to engage private agencies, such as appellants, who are licensed and regulated by the Department. *N.J.S.A.* 52:27D–126(a). Another is to have the work done by personnel of the Department. *N.J.S.A.* 52:27D–128.[1]

The main regulation under attack requires that when a municipality engages private agencies, it do so through open bidding. *N.J.A.C.* 5:23–4.5A.

---

[1] The other two choices are to have the work done by municipal officers and employees, *N.J.S.A.* 52:27D–126(a), or done jointly with the officers and employees of one or more other municipalities pursuant to the Interlocal Services Act, *N.J.S.A.* 40:8A–1 *et seq.*

Appellants are concerned that bidding will lead to abuses such as "low-ball" bidding that will drive other agencies out of the market, and cost cutting by successful bidders that will lower the quality of their work and thereby endanger the public. Appellants' legal argument is that the statute prohibits bidding.

The statute provides in relevant part:

> The commissioner shall have all the powers necessary or convenient to effectuate the purposes of this act, including, but not limited to, the following powers in addition to all others granted by this act:
>
> *　*　*　*　*　*　*　*
>
> i. To adopt, amend and repeal rules and regulations providing for:
>
> *　*　*　*　*　*　*　*
>
> (2) The setting of the amounts of fees to be charged by a private agency for inspection and plan review services; provided, however, that such fees shall not be more than those adopted and charged by the department when it serves as a local enforcement agency....

The Commissioner contends that she may exercise her power of "setting ... the amount of fees to be charged by a private agency" by adopting a regulation that establishes the fees through open bidding:

Accordingly, the Commissioner adopted *N.J.A.C.* 5:23–4.5A, which requires in part that municipalities engage a "private on-site inspection agency" by soliciting bids from authorized and licensed private agencies. The bids must be "expressed as a uniform percentage, by subcode, which shall not exceed 100 percent, of the fees charged, as of the date on which the bids are opened, by the Department when it serves as an enforcing agency...." *N.J.A.C.* 5:23–4.5A(b)2.

The statute requires the Commissioner to abandon the method of setting private-agency fees that had been established in the statute's predecessor, *L.*1983, *c.* 338 (predecessor statute), by deleting a proviso in the predecessor statute that "such fees shall be identical to those adopted and charged by the Department when it serves as a local enforcement agency...." Under the current statute, the amount of fees charged by the Department

caps the fees private agencies may charge. Otherwise the Commissioner may set the fees by any reasonable method.

Ultimately the judiciary interprets statutes that establish a regulatory scheme. *Service Armament Co. v. Hyland,* 70 *N.J.* 550, 560–63, 362 *A.*2d 13 (1976). However, courts must "accord substantial deference to an interpretation of a statute or regulation by the agency responsible for enforcing it." *Petition of Adamar of New Jersey, Inc.,* 222 *N.J.Super.* 464, 469, 537 *A.*2d 704 (App.Div.1988). We have considered the arguments of counsel, read carefully the public's formal written comments and the Department's responses respecting the regulation before it was adopted, and reviewed a transcript of the related public hearing conducted by the Director of the Division of Housing and Development. It is obvious from the record that the Commissioner was sensitive to the reasons for and against setting fees by open bidding and reasonably decided to use that method.

A change in the method of setting fees came about because at least some of the fees charged by the Department were higher than the market required. That was the stated reason given by the Legislature for amending the statute:

> This bill amends the State Uniform Construction Code Act to eliminate the requirement that fees charged by private inspection agencies be identical to those charged by the Department of Community Affairs (DCA) when it is the enforcing agency. The bill limits the fees at the level charged by DCA.
>
> Costs incurred by private inspection agencies and DCA are not the same. Therefore, private inspection agencies should be permitted to compete with DCA by charging lower fees. In addition, the higher fees for private inspection agencies have not necessarily benefitted the private agencies because of the lack of competition.
>
> While private agency fees should be subject to regulation in order to prevent price-cutting at the expense of quality, the determination of fair and reasonable rates for private agencies should be a matter separate from the charging of fees necessary to cover the department's costs.

The Department's fees often exceed fees that private agencies would charge because the Department has to build into its fee structure costs that are not shared by private agencies, such as sending code enforcers to all parts of the state and paying state-employee benefits.

The Commissioner declined to establish a fee schedule herself because doing so would require her to construct a cumbersome rate-setting machinery, including procedures for examining the reasonableness and investigating the *bona fides* of costs that agencies might claim. Costs must be verified to assure that the agencies receive a fair but not excessive profit. Such a procedure would be expensive, time-consuming and intrusive.

She also rejected allowing municipalities to negotiate fees privately, which would present obvious opportunities for favoritism and abuse.

The remaining choice, the one selected by the Commissioner, was to set the fees through open bidding with sufficient additional regulation and monitoring, found in related amendments to the regulations, to assure that the successful bidder's performance will be maintained at an acceptable level. There is no reasonable basis for us to question the Commissioner's judgment.

Appellants do not particularly challenge the reasonableness of the Commissioner's judgment. Rather, they claim that she exceeded her statutory authority by imposing an open-bidding method of setting fees because it is not expressly permitted in the statute and the Legislature had rejected open bidding when it enacted the predecessor statute.

When the Code was first enacted in 1975, it was assumed that municipalities had to engage private code enforcement agencies through open bidding as required by the Local Public Contracts Law, *N.J.S.A.* 40A:11–1 *et seq. See Burlington Tp. v. Middle Dep't Inspection Agency, Inc.,* 175 *N.J.Super.* 624, 421 *A.*2d 616 (Law Div.1980). The 1983 predecessor statute, requiring that private agency fees be the same as those charged by the Department, was in response to perceived abuses by municipalities and bidders under the open-bidding process. *See Matter of Cherry Hill Tp.,* 217 *N.J.Super.* 140, 524 *A.*2d 1327 (App.Div.1987). Indeed, the Legislature thereafter amended the Local Public Contracts Law, *N.J.S.A.* 40A:11–1 *et seq.,* to exclude expressly the hiring of private code and subcode enforcement agencies from the

usual bidding requirement for local public contracts. *N.J.S.A.*
40A:11–5(1)(r) added the exclusion as follows:

> Any purchase, contract or agreement of the character described in section 4 of
> P.L.1971, c. 198 (C. 40A:11–5) may be made, negotiated or awarded by the
> governing body without public advertising for bids and bidding therefor if:
>
> (1) The subject matter thereof consists of:
>
> *   *   *   *   *   *   *   *
>
> (r) On-site inspections undertaken by private agencies pursuant to the "State
> Uniform Construction Code Act" (P.L.1975, c. 217; C. 52:27D–119 et seq.) and the
> regulations adopted pursuant thereto.

Appellants argue that because the predecessor statute aban-
doned bidding in favor of equating private agency fees with the
fees charged by the Department, the Legislature had forever
barred the Commissioner from returning to bidding even if, as
here, the return is accompanied by additional regulations aimed at
preventing at least some of the abuses that had occurred when
bidding was last used.

*N.J.S.A.* 40A:11–5(1)(r) does not prohibit bidding and we find no
evidence that the Legislature intended to keep the Commissioner
from using bidding as a method for setting private agency fees.
It appears from the current statute and its legislative statement,
that the Legislature is agreeable to any method that will establish
competition among private agencies without sacrificing their per-
formance. The current regulations are reasonably designed to
reach that goal and must therefore be sustained.

■ As to appellants' other arguments, we are satisfied that in
adopting the regulation under attack and the related regulations,
the Commissioner substantially complied with the Administrative
Procedure Act. *N.J.S.A.* 52:14B–4(d). We are mindful in that
regard that the subject matter of the regulations is well known to
the parties in interest and there is no evidence that any of them
lacked notice of the meaning and purpose of the regulations when
they were proposed. We are also satisfied that there is no
reasonable basis for holding smaller private agencies to a lower
standard of performance than larger ones in protecting the public
safety.

Finally, although appellants claim that for the first time the new regulations relieve private agencies from having to carry errors-and-omissions insurance, there is no evidence that the current regulations are different from the prior regulations in that respect. The Commissioner has consistently stated that errors-and-omissions insurance was not required under the prior regulations. Appellants' claim to the contrary has no basis.

We sustain the amendments to *N.J.A.C.* 5:23–4.4, –4.5, –4.5A, –4.14, –4.18 and –4.20, adopted by the Commissioner of the Department of Community Affairs on June 2, 1994.