**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0776-22

PORT IMPERIAL FERRY
CORP., d/b/a NY WATERWAY,

    Plaintiff-Appellant,

v.

MONMOUTH COUNTY,
MONMOUTH COUNTY
BOARD OF COUNTY
COMMISSIONERS, and
SEASTREAK, LLC,

    Defendants-Respondents.

_____

Argued January 8, 2021 – Decided April 2, 2024

Before Judges Berdote Byrne and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1847-22.

Maeve Ellen Cannon argued the cause for appellant (Stevens & Lee, attorneys; Maeve Ellen Cannon, Patrick D. Kennedy, Wade Donald Koenecke, and Michael A. Cedrone, of counsel and on the briefs; Catherin MacDuff, on the briefs).

Mitchell Bruce Jacobs argued the cause for respondent SeaStreak, LLC (Cleary, Giacobbe, Alfieri, Jacobs, LLC, attorneys; Mitchell Bruce Jacobs and Salvatore Joseph Alfieri, on the brief).

David Allan Clark argued the cause for respondents Monmouth County and the Monmouth County Board of County Commissioners (Dilworth Paxson LLP, attorneys; David Allan Clark, of counsel and on the brief; John M. Glynn, on the brief).

PER CURIAM

Unsuccessful and incumbent bidder Port Imperial Ferry Corporation, d/b/a NY Waterway (NY Waterway) challenges the award of a two-million-dollar contract to defendant SeaStreak, LLC (SeaStreak) by defendants Monmouth County (County) and Monmouth County Board of County Commissioners (Board). Fundamental to this appeal is whether the County may utilize a hybrid bidding process in procuring a bid proposal. While we acknowledge a public contract may be awarded as an extraordinary unspecifiable service (EUS) under N.J.S.A. 40A:11-6.1(b) or through competitive bids under N.J.S.A. 40A:11-5, a public entity may not utilize a hybrid request for procurement under the Local Public Contract Law, N.J.S.A. 40A:11-1 to -60 (LPCL). Having reviewed the contentions in light of the facts and applicable principles of law, we reverse the decision of the trial court, conclude all bids are rejected, and the contract is to be readvertised for bidding.

I.

We discern the following facts from the record. For twenty years, NY Waterway held a license to operate ferry services from the Belford Ferry Terminal (Terminal) on county owned property in Middletown to several locations in Manhattan.

The County's Request for Proposal

On September 13, 2021, the County issued RFP #P-3-2022 (RFP), seeking proposals for a ferry operator to provide services from Middletown to Manhattan. The RFP was rather lengthy and included numerous detailed provisions relating to the general conditions of the bid specifications, the proposal submission requirements, the parties' responsibilities, and the contract terms. We, however, focus only on those provisions of the bid specifications that are directly relevant to this bid dispute.

Bidders were advised that the contract "shall be awarded as an extraordinary unspecifiable service under a 'Fair and Open Process' as defined within the New Jersey Pay-[to]-Play Law, [N.J.S.A. 19:44A-20.3 to -25]." In Paragraph 19 of the General Conditions, bidders were also notified of the "pay to play" disclosure requirement. The RFP also stated that the contract would be awarded to the proposal deemed "most advantageous" to the County based on

factors including base rent per passenger, and additional rent based on a percentage of gross revenue from concessions.

The Bid Dispute

NY Waterway posed several questions to the County concerning the RFP, none of which questioned the procurement process. On December 7, 2021, the County received and opened the bid proposals from NY Waterway and SeaStreak. NY Waterway posed several questions to the County concerning the RFP, none of which questioned the procurement process. Two months later, the County advised NY Waterway the review process was "on-going" and requested a sixty-day extension for the bid proposal in accordance with N.J.S.A. 40A:11-24. NY Waterway agreed to the County's request.

On March 25, 2021, after reviewing the proposals, the County notified NY Waterway that it had "determined that the bid proposal [was] deficient because [NY Waterway] failed to submit a consent of surety with its proposal." Thereafter, NY Waterway initiated a bid dispute when its bid was rejected, arguing its bid proposal was not deficient and requesting reconsideration by the County. NY Waterway was told the "deficiency could not be cured or waived by the County." In reply, NY Waterway again requested the County reconsider the rejection of its bid and "properly evaluate" its bid in accordance with the

4

LPCL. The day before the Board's meeting, NY Waterway sent a third request for reconsideration of its bid rejection to the Board and the County. Consequently, the County evaluated and scored only SeaStreak's bid.

The Board's Resolution

On June 21, 2022, the Board adopted a resolution awarding the contract to SeaStreak and rejecting NY Waterway's bid. The resolution provided the County determined that SeaStreak's bid proposal was "compliant with the bid specifications and that it [was] the most advantageous responsive bid to the RFP, price[,] and all other factors considered." The County further determined NY Waterway's bid proposal was rejected because it "failed to submit a [c]onsent of [s]urety, a mandatory bid item, with its bid proposal."

The Prerogative Writs Action

On July 6, 2022, NY Waterway filed an action in lieu of prerogative writs, an order to show cause (OSC), and a verified complaint in the Law Division challenging the rejection of its bid and the County's award of the contract to SeaStreak. The County filed a responsive pleading and a certification from Helen P. Fiore, the County's director of purchasing, explaining the procurement process.

The trial court granted the OSC, imposed temporary restraints, and scheduled a hearing. Following an August 12, 2022 hearing, the trial court removed the temporary restraints and permitted limited discovery.

On November 2, 2022, following the final hearing, the trial court issued a written decision and a memorializing order denying NY Waterway's motion for a permanent injunction and dismissing its complaint. At the outset, the court considered NY Waterway's application as a preliminary injunction, finding "the matter [was] not ripe for a determination of permanent injunctive relief." Accordingly, NY Waterway's application was analyzed under the four-prong test articulated in Crowe v. DeGoia, 90 N.J. 126, 132 (1982). The court ultimately concluded the County's rejection of NY Waterway's bid proposal was not arbitrary, capricious, or unreasonable.

The court rejected NY Waterway's then "newly minted" argument that the contract should be voided, and the County be required to rebid the ferry services because it failed to comply with the procedural requirements for an EUS. The court noted NY Waterway was not challenging and never challenged the propriety of the County's procurement process. The court, however, concluded that the procurement process utilized by the County "had elements of both [EUS] and competitive contracting." The court explained that "given the hybrid nature

of the offering, it [was] not at all clear that the certification could have been filed with the Board of County Commissioners." The court explained N.J.A.C. 5:34-2.3(b) requires, prior to a contract award for extraordinary unspecifiable services, that a designated official of the contracting unit file a certificate with the governing body to attest, among other things, by way of a complete explanation why it is not reasonably possible to draft specifications. Yet the County's RFP, issued consistent with competitive contracting requirements under N.J.S.A. 40A:11-4.4, contained fourteen pages of technical specifications. Noting the County did not file the standard certification, the court stated that "it [was] not clear how anyone from the County's contracting unit could have or would have certified to the [Board] that it was 'not reasonably possible to draft specifications' in order to claim EUS exemption status."

The court also rejected NY Waterway's alternative argument that "the County failed to comply with the provision governing competitive contracting proposal solicitation under N.J.S.A. 40A:11-4.5(d) because the 'purchasing agent or counsel or administrator' failed to 'prepare a report evaluating and recommending the award of a contract.'" The court determined NY Waterway's bid was never fully evaluated, and thus, the aforementioned report "could not have been effectuated" as there was "nothing on which such a report could have

been based." The court found neither NY Waterway nor the County argued the competitive contracting process was "strictly employed." Thus, the court determined the report was not prepared and, "therefore, could not have been effectuated" because NY Waterway's proposal was determined to be noncompliant based on the lack of consent of surety form and was not evaluated as the "most advantageous, price and all other factors considered."

The court also concluded NY Waterway's assertion that it was not challenging the procurement process used by the County "effectively estop[ped] it from claiming entitlement to a rebid of the [c]ontract, because it was the hybrid procurement process itself, in which [NY Waterway] was a willing participant, that rendered problematic strict compliance" with the procedural requirements of the LPCL.

## II.

On appeal, NY Waterway presents three arguments. First, the trial court's order sustaining the County's award "defied" well settled bidding law. Specifically, the County failed to comply with LPCL regarding EUS and competitive contracting, the "hybrid procurement process" is ultra vires, and NY Waterway was not estopped from asserting the County failed to comply with the

A-0776-22

LPCL. Second, the trial court erred in sustaining SeaStreak's noncompliant bid. Lastly, the trial court erred in sustaining the County's rejection of its bid.

We review de novo the trial court's legal determination that the County's hybrid procurement process satisfied the LPCL, as it was based on statutory interpretation. See Dobco, Inc. v. Bergen Cnty. Improvement Auth., 468 N.J. Super. 519, 537 (App. Div. 2021), aff'd, 250 N.J. 396 (2022) ("We review matters of statutory interpretation de novo.") (quoting MasTec Renewables Constr. Co., Inc. v. SunLight Gen. Mercer Solar, LLC, 462 N.J. Super. 297, 318 (App. Div. 2020)); see also Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.") (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Generally, an "unsuccessful bidder[]" has "no standing to challenge the award of the contract to a rival bidder or to attack allegedly illegal specifications." Waszen v. City of Atl. City, 1 N.J. 272, 276 (1949); see also Autotote Ltd. v. New Jersey Sports & Exposition Auth., 85 N.J. 363, 369 (1981) ("[A] party is estopped from challenging the award of a contract which it actively sought through the same procedures it now attacks."). Although NY Waterway was well aware the EUS for

9                                                                    A-0776-22

the public contract contained detailed bid specifications akin to a public bidding contract prior to bidding, we "address the merits of plaintiff's argument" where "[t]he issue is one of substantial public importance and large sums of public monies are at stake." Ibid. Therefore, "[s]ince the question is ripe for judicial resolution and since a decision on the public bidding issue will serve the public interest," we must determine whether the County's hybrid procurement process is consistent with the public bidding laws. Ibid.; Cf. Advance Elec. Co. v. Montgomery Twp. Bd. of Ed., 351 N.J. Super. 160, 167 (App. Div. 2002) (addressing an otherwise moot appeal from bid protest because it "squarely implicates the public bidding process, which is a matter of great public interest"); In re Protest of Cont. Award for Project A1150-08, 466 N.J. Super. 244, 263-64 (App. Div. 2021) ("Statutory interpretation in public bidding disputes can be 'a matter of great public interest.'") (quoting Advance Elec., 351 N.J. Super. at 167).

We reassert the foundational principles of public bidding and the award of public contracts. "The purpose of the [LPCL] . . . is to promote competitive bids 'to secure for the public the benefits of unfettered competition.'" Muirfield Const. Co., Inc. v. Essex Cty. Imp. Auth., 336 N.J. Super. 126, 132 (App. Div. 2000) (quoting Meadowbrook Carting Co., Inc. v. Borough of Island Heights,

10

138 N.J. 307, 313 (1994)).  "Public bidding statutes exist for the benefit of taxpayers, not bidders, and should be construed with sole reference to the public good." Nat'l Waste Recycling, Inc. v. Middlesex Cnty. Improvement Auth., 150 N.J. 209, 220 (1997).  Thus, our Supreme Court "has curtailed 'the discretion of local authorities by demanding strict compliance with public bidding guidelines.'" Borough of Princeton v. Bd. of Chosen Freeholders of Mercer, 169 N.J. 135, 160 (2001) (quoting L. Pucillo & Sons, Inc. v. New Milford, 73 N.J. 349, 356 (1977)).

The Legislature has enacted several exceptions to the public bidding requirements of the LPCL which "generally apply[] to situations in which public bidding would be 'meaningless or impractical.'" Nat'l Waste Recycling, 150 N.J. at 223 (quoting Capasso v. L. Pucillo & Sons, 132 N.J. Super. 542, 550 (Law & Ch. Div. 1974), aff'd, 132 N.J. Super. 473 (App. Div.1974)).  However, "it is axiomatic that statutory exceptions to public bidding requirements should be strictly construed so as not to dilute th[e] policy" underlying the public bidding laws "or permit a public body to avoid pertinent legislative enactments." Autotote, 85 N.J. at 370.

We focus on the EUS procurement exception in the LPCL.  An EUS is defined as a service that is "specialized and qualitative in nature requiring expertise, extensive training and proven reputation in the field of endeavor."  N.J.S.A. 40A:11-2(7).  Under this exception, a contract for an EUS "the amount of which

11

exceeds the bid threshold, may be negotiated and awarded by the governing body without public advertising for bids and bidding therefor[e] and shall be awarded by resolution of the governing body . . . ."  N.J.S.A. 40A:11-5(1)(a)(ii). An EUS requires a "documented effort by the contracting agent to secure competitive quotations," and "a determination in writing by the contracting agent that the solicitation of competitive quotations is impracticable."  N.J.S.A. 40A:11-6.1(b).  However, as the LPCL provides, "[t]he application of this exception shall be construed narrowly in favor of open competitive bidding, whenever possible . . . ."  N.J.S.A. 40A:11-5(1)(a)(ii).  "The governing body shall in each instance state supporting reasons for its action in the resolution awarding each contract . . . in the manner set forth in subsection [N.J.S.A. 40A:11-5(1)(a)(i)]."  Ibid.  Thus, the award of any purchase, contract, or agreement properly characterized as being an EUS is subject to N.J.S.A. 40A:11-6.1. Burlington Twp. v. Middle Dept. Inspection Agency, 175 N.J. Super. 624, 630 (Law Div.1980).

The Division of Local Government Service (Division) has adopted regulations limiting the use of the [EUS] exception.  N.J.A.C. 5:34-2.2.  Those regulations require that (1) the qualitative nature concerning the performance of the services cannot be reasonably described by written specifications, (2) the services were

12

previously bid or characterized as a "continuous ongoing nature," shall be subject to the "presumption that such services may not be classified as an EUS, unless the public entity can demonstrate in writing its inability to prepare written specifications describing the qualitative nature of the performance of the services required[,]" and (3) "[i]f written specifications can be prepared describing the qualitative nature of the performance of the services, then they shall be so written, but notwithstanding that the other criteria of the definition may be met." N.J.A.C. 5:34-2.2(c).

Further, prior to awarding an EUS contract, a designated administrative official of the public entity "must file a certificate with the governing body clearly describing the nature of the work to be done, stating that it is not reasonably possible to draft specifications, describing the informal solicitation of quotations, and describing in detail why the contract meets the provisions of the statute and these rules." N.J.A.C. 5:34-2.3(b). "A mere recitation of the language in the statute shall not be sufficient" for awarding an EUS. Ibid.

Here, the County issued the RFP expressly stating the contract would be awarded under the EUS exception. It is undisputed by the parties that the certificate required by N.J.A.C. 5:34-2.3(b) was not filed by the County. As concluded by the trial court, the County could not have filed a certification in

accordance with the regulations because of the fourteen pages of technical specifications in the RFP. We also highlight the prior 1999 RFP issued by the County and the contract awarded to NY Waterway was previously bid and, therefore, was not classified as an EUS. Therefore, the RFP was not, and could not have been, properly classified as an EUS exception.

The trial court affirmed the County's procurement process because it also incorporated elements of the "competitive contracting" exception to the LPCL and was therefore "a hybrid contract procurement." Under the Competitive Contract in Lieu of Public Bidding statute, N.J.S.A. 40A:11-4.1 to -4.5 exception, "[n]otwithstanding the provisions of any law, rule, or regulation to the contrary, competitive contracting may be used by local contracting units in lieu of public bidding for procurement of specialized goods and services the price of which exceeds the bid threshold, for" certain enumerated purposes, including "[c]oncessions" and the "operation, management or administration of other services, with the approval of the Director of the Division . . . ." N.J.S.A. 40A:11-4.1(j)-(k). The purpose of this exception is "to provide greater public oversight of the contracting process than is available under the current exceptions to public bidding for professional or extraordinary unspecifiable services" while also providing contracting entities "greater discretion in entering into contracts with

14

qualified vendors than is permitted under the normal requirements of public bidding . . . ." Sponsor's Statement to A. 3519 104 (L. 1999, c. 440).

Several specific requirements must be satisfied to qualify as a competitive contracting exception: (1) the governing body must "pass a resolution" authorizing its use "each time specialized goods or services . . . are desired to be contracted[,]" N.J.S.A. 40A:11-4.3(a); (2) a public RFP process must be used, with notice of the RFP "published in an official newspaper of the contracting unit at least [twenty] days prior to the date established for the submission of proposals[,]" N.J.S.A. 40A:11-4.5(a); (3) the award of the contract must "be based on an evaluation and ranking, which shall include technical, management, and cost related criteria," which "criteria shall not unfairly or illegally discriminate against or exclude otherwise capable vendors[,]" N.J.S.A. 40A:11-4.4(b); and (4) a report must be prepared by the "purchasing agent or counsel or administrator . . . evaluating and recommending the award of a contract or contracts" which "shall list the names of all potential vendors who submitted a proposal[,]" summarize their proposals, and recommend the selection of vendor that is "clear in the reasons why the vendor or vendors have been selected among others considered, and shall detail the terms, conditions, scope of services, fees, and other matters to be incorporated into a contract[,]" N.J.S.A. 40A:11-4.5(d).

Although the trial court found that the County's RFP met some of the requirements of the competitive contracting exception, including the use of evaluation criteria and a ranking system that was identified in the RFP and was, therefore, transparent to bidders, not all the competitive contracting exception requirements were met. Again, critical to this exception, no report was prepared recommending the award of a contract as mandated by N.J.S.A. 40A:11-4.5(d).

Having reviewed the record in light of the governing principles, we depart from the trial court's conclusion that the award of the contract should "stand." We conclude the trial court's decision was not based on substantial credible evidence in the record and supported by case law. We further conclude the trial court's decision is contrary to the well-settled "axiom[] that statutory exceptions to public bidding requirements should be strictly construed . . . ." Autotote, 85 N.J. at 370. We hold that the County's use of a hybrid procurement process was contrary to the statutory mandate of the LPCL that exceptions be narrowly construed.

Having determined the bidding process failed to comply with the LPCL, we decline to address the remaining arguments raised by NY Waterway. We reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0776-22